## 71678. DILLARD v. THE STATE.
(341 SE2d 310)

DEEN, Presiding Judge.

Stephen F. Dillard brings this appeal from his conviction of trafficking in marijuana in 1981. This appeal was timely filed, but there was a delay in transcribing the record and in its transmission to this court because of the illness and death of his trial attorney, Al Horne.

Dillard was first observed by the arresting police officer driving a car in the driveway of a residence which had recently been burglarized three times. When appellant saw the police cruiser, he stopped the car abruptly and his passenger appeared to hide his head. The officer's suspicions were aroused and he turned his vehicle around to go back and check on them, but they had disappeared. The deputy sheriff then drove through neighboring subdivisions to see if he could locate them. When he finally spotted the car, he noted that it had an out-of-county tag and made an investigatory stop. Appellant produced a California driver's license, claimed he was visiting a friend in the area, and that he was turning around in the driveway because he made a wrong turn. He could not give the friend's name, but the passenger provided a name. Neither, however, could give an address or directions to get to the "friend's" house, where they claimed they had just visited.

The deputy then asked Dillard to exit the vehicle to complete a "field interrogation" card. When he did so, the officer smelled alcohol on his breath. Dillard admitted that he had been drinking some beer. A roadside sobriety test was positive for alcohol. Appellant was advised of his rights and arrested for driving under the influence of alcohol. When the officer requested permission to look in the trunk of the car, it was refused. The passenger was permitted to drive the car back to the sheriff's office followed by a second patrol car. Before the breath alcohol test was given, and while the deputy was preparing an affidavit for a search warrant, the deputy was advised that the car had an improper registration in that the decal affixed to the tag was issued for another license plate. Appellant advised the officer that the car was registered to his sister, but he was placed under arrest and the car was impounded. The breath alcohol test revealed only a very small quantity of alcohol in his system and he was not charged with D.U.I.

In the presence of appellant, the deputy conducted an inventory search. Prior to the actual search, the officer looked in the window of the automobile and saw what appeared to be a partially smoked mari-

juana cigarette in the ashtray. When the deputy informed another officer that he spotted a drug violation, appellant exclaimed, "Oh God!" The trunk was opened and four large bales of marijuana were discovered. Dillard commented, "Oh God, now you've got it all now." Someone asked how much was in there and appellant replied there were 200 pounds. Dillard was given the *Miranda* warnings again and arrested for violating the Georgia Controlled Substances Act. When he was asked where the marijuana came from, he stated that he had gotten it in Georgia, that he was going to sell it in Georgia, and that he had travelled from California to do this marijuana deal.

1. Appellant first contends that the court below erred in denying his motion to suppress because the stop was not justified. The evidence showed that appellant was seen in the driveway of a house where several burglaries had occurred and that he and his passenger acted in a suspicious manner when they saw a police cruiser. As the deputy had an articulable suspicion of burglary, the "Terry-type" stop was justified. *State v. Carter*, 240 Ga. 518 (242 SE2d 28) (1978).

2. The contention that the inventory search was unlawful lacks merit because appellant was arrested and the car impounded for improper tag registration. The law enforcement authorities were authorized to impound the car while an investigation was conducted because it could have been stolen. A seizure to determine ownership of a vehicle in this situation is not unreasonable and the deputy was authorized to conduct an inventory search. See *South Dakota v. Opperman*, 428 U. S. 364 (96 SC 3092, 49 LE2d 1000) (1976); *Mooney v. State*, 243 Ga. 373, 375 (254 SE2d 337) (1979).

3. Appellant also cites as error the refusal of the trial court to allow John Cages, the passenger, to testify at the motion to suppress hearing under the limitations set forth in *Simmons v. United States*, 390 U. S. 377 (88 SC 967, 19 LE2d 1247) (1968). As a result of the court's ruling, Cages' attorney refused to let him take the stand because his client was under indictment for the same offense.

Appellant claims Cages should have been permitted to testify without cross-examination as to guilt under the holding in *Simmons*. We do not read that case as permitting the type of immunity claimed by appellant. *Simmons* holds that when a defendant testifies in support of a motion to suppress, his testimony may not thereafter be admitted at trial against him on the issue of guilt unless he does not object.

4. In his next two enumerations of error, Dillard claims the trial court erred in not sustaining his challenges to the grand and petit juries. He claims the court erred in allowing the Fayette County Jury Commissioners to compile jury lists without periodic replacements of the commissioners as required by statute.

The motion transcript shows that four jury commissioners were

appointed in Fayette County in 1975 and two more were appointed in 1977. None had been appointed from that time until the date of trial in 1981. Former Code Ann. § 59-101 provided: "When the board is composed of six members, on the first appointment two shall be appointed for two years, two for four years and two for six years and their successors shall be appointed for a term of six years . . . no person shall be eligible or appointed to succeed himself as a member of said board of jury commissioners."

While it is clear that the appointment of the Fayette County Jury Commissioners by the Senior Judge of the Superior Court was not done in compliance with the codal requirements, we believe that the provisions of Code Ann. § 59-101 are merely directory to provide organization to the board of commissioners and were not intended to vest procedural rights in criminal defendants. See *Burney v. State*, 244 Ga. 33, 38 (257 SE2d 543) (1979).

Dillard further claims that the court below erred in overruling his challenge to the grand and petit juries and in permitting the jury commissioners to use wrong standards in selecting jurors by permitting them to use a quota system to obtain a certain percentage of blacks and by generally allowing them to select non-cross sectional jury lists.

Former Code Ann. § 59-106 (presently OCGA § 15-12-40 (a) (1)) provides: "At any time it appears to the jury commissioners that the jury list, so composed, is not a fairly representative cross section of the intelligent and upright citizens of the county, they shall supplement the list by going out into the county and personally acquainting themselves with other citizens of the county, including intelligent and upright citizens of any significantly identifiable group in the county which may not be fairly represented on the jury list." Appellant does not claim that the methods employed by the jury commissioners resulted in a list that was racially or otherwise unacceptable; he challenges only the method of creating the list. It has been previously determined that the statutory procedures for creating the list are merely directory and do not serve to deprive the defendant of any rights. *Burney v. State*, supra. Accordingly, this enumeration is without merit.

5. Appellant next argues that the court erred in denying his motion that an expert chemical analyst of his choice be permitted access to standards for performing the necessary tests on the alleged marijuana. In arguing this enumeration, he also contends it was error for the state to destroy the evidence after it performed its tests. The evidence shows that the state retained representative samples from each of the four bales and that the bales were photographed. We cannot consider this argument, however, because enumerations of error cannot be enlarged to contain issues not included in the enumeration.

*Tucker v. State*, 173 Ga. App. 742 (327 SE2d 852) (1985).

The court did not deny appellant the right to have his own expert test representative samples and determine the weight of the marijuana, but it did deny him access to a standard sample because he was not licensed by either the state or federal governments to possess it. There was evidence to show that Dillard's witness had been denied a license because he had not met the security requirements to obtain a license. It was not error for the trial court to deny the defendant's witness access to the drugs without the required licensing. The trial court is not required, under the law as it presently exists, to confer a license to handle drugs on a defendant's chosen expert witness.

6. The state was properly permitted to offer evidence of the weight of the alleged marijuana as being over 100 pounds after the state's expert witness testified that she had weighed it and that the total weight of the bales was 194 pounds. Moreover, appellant admitted that the marijuana confiscated by the police weighed 200 pounds. The jury could consider this evidence and view the representative samples and photographs and determine the ratio of excludable material, the dryness of the material, and determine that appellant possessed more than 100 pounds of marijuana.

7. Appellant objects to a portion of the trial court's jury charge, which he claims would allow them to find him guilty of simple possession of marijuana rather than trafficking if it found "beyond a reasonable doubt that the total weight was not in excess of 100 pounds." His brief implies that this charge was burden shifting as the jury was instructed that the defendant had to "prove beyond a reasonable doubt that there was less than 100 pounds of marijuana before they could consider the lesser offense of simple felony marijuana possession."

An examination of the charge as a whole does not support such an allegation. The jury was charged that the *state* had to prove the defendant knowingly possessed more than 100 pounds and "If you find that the state has failed to prove that the alleged marijuana weighs in excess of 100 pounds . . . then you shall consider the lesser included offense of possession of marijuana." We find no error as no burden of proof was placed upon the defendant.

8. Appellant's seventh and eighth enumerations of error have not been supported by citation to authority or argument and are deemed abandoned. Court of Appeals Rule 15 (c) (2).

9. It was not error for the trial court to overrule Dillard's motion for a directed verdict of acquittal for the reasons set forth above. Based on the evidence presented at trial, a rational trier of fact could find him guilty beyond a reasonable doubt. *Crawford v. State*, 245 Ga. 89 (263 SE2d 131) (1980).

*Judgment affirmed. Benham, J., concurs. Beasley, J., concurs in the judgment only.*

Decided February 13, 1986.

W. Bruce Maloy, for appellant.

Johnnie L. Caldwell, Jr., District Attorney, Paschal A. English, Christopher C. Edwards, J. David Fowler, Assistant District Attorneys, for appellee.