## A97A1744. JINKS v. THE STATE.

(493 SE2d 214)

BEASLEY, Judge.

Steve Jinks was indicted with co-defendants Jeff Hunt and Mark Rodgers on charges of manufacturing marijuana (OCGA § 16-13-30 (j)) and possessing more than one ounce of marijuana (OCGA § 16-13-30 (j)). The jury acquitted Rodgers, convicted Hunt on all charges, and convicted Jinks only of possession. Hunt's conviction was affirmed. *Hunt v. State*, 222 Ga. App. 66 (473 SE2d 157) (1996). Although the evidence supports Jinks' conviction, the court's admission of evidence showing a prior charge against him requires a new trial.

1. The standard in *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979), applies to Jinks' challenge to the sufficiency of the evidence, and in addition evidence is viewed with all reasonable inferences made, and all issues of weight and credibility resolved, in favor of the verdict. *Patterson v. State*, 181 Ga. App. 68, 69 (2) (351 SE2d 503) (1986).

Hunt lived on his family's Spalding County farm, and Rodgers rented a house there. On the morning of June 8, 1989, airborne law enforcement officers performing a "fly-over" spotted marijuana growing in four separate remote plots on the Hunt farm. Officers on the ground confiscated several hundred plants and found marijuana seedlings growing behind Hunt's home. In the rental house, which contained some of Rodgers' personal belongings, they discovered four large bales of marijuana. Duct tape securing two of those bales bore Jinks' fingerprints.

Later that evening, GBI officers found Rodgers at a motel several counties away. Rodgers was leaning in the passenger window of a car bearing a Spalding County tag and driven by Jinks. The officers searched Jinks' auto and found $2,300 cash and a signed check in the amount of $5,000 with no payee named. Although Jinks denied knowing Rodgers, Jinks' former wife testified she had met Rodgers through Jinks. Telephone records from the Jinks' residence revealed a fourteen-minute call to Rodgers' number on June 4, two calls from Jinks' to Rodgers early on the evening of June 8, and two calls from Rodgers' number to Jinks' that same night. These calls were made several hours before GBI officers spotted Jinks and Rodgers together at the motel. Although Jinks and his wife had divorced and Jinks no longer lived at that residence, his former wife testified Jinks could have made the calls to Rodgers because she was not home that night, Jinks had a house key, and he used that phone almost daily. She also testified Jinks and Hunt often fished together.

This evidence was sufficient for the jury to convict Jinks of possessing marijuana. First, Rodgers' acquittal is no factor, as the incon-

sistent verdicts rule has been abolished. *Milam v. State*, 255 Ga. 560, 562 (2) (341 SE2d 216) (1986). Second, contrary to Jinks' argument, the fingerprints on the tape were not the only evidence linking him to the drugs. In addition, evidence showed Jinks had a relationship with Rodgers and Hunt before and after the crime and, shortly after the seizure, lied to GBI agents about his relationship with Rodgers. "The jury may infer criminal intent from conduct before, during, and after the commission of the crime. [Cit.]" *Williams v. State*, 262 Ga. 677 (1) (424 SE2d 624) (1993). Compare *Barnett v. State*, 153 Ga. App. 430 (1) (265 SE2d 348) (1980), in which the fingerprints were the sole evidence linking the defendant to the crime.

Furthermore, the jury could reject Jinks' alternate hypothesis regarding the fingerprints as unreasonable. See *Baxter v. State*, 211 Ga. App. 650 (1) (440 SE2d 72) (1994). To explain the fingerprints, Jinks presented evidence showing he worked at a store where duct tape was sold, but he did not show the duct tape securing the bales was from that store. The State's fingerprint expert testified prints do not hold up well on duct tape over time and are easily smudged and erased because the tape is not porous. Compare Jinks' explanation with that in *Barnett*, supra, where the defendant explained in detail how he had likely left his prints at the scene.

2. Admission of Jinks' fingerprint card violated OCGA §§ 24-2-2 and 24-9-20 (b). The GBI examiner had obtained the card from the Georgia Crime Information Center's files and compared the prints on it to the prints on the duct tape. The card bears Jinks' name and signature, lists "2-07-85" as the "Date Arrested," and under the heading "Charge" states "Driving Under Influence" and "Too Fast For Conditions." Although Jinks objected to the card as improper character evidence, the court admitted it without redacting any of the crime-identifying information.

Evidence of a defendant's bad character is inadmissible as irrelevant and prejudicial unless the defendant chooses to raise his character as a defense. See generally *Jones v. State*, 257 Ga. 753 (363 SE2d 529) (1988). *Strawder v. State*, 207 Ga. App. 365 (2) (427 SE2d 792) (1993), held it was reversible error on almost identical facts. Strawder's trial court, over objection, allowed into evidence a fingerprint card showing the date of the defendant's "arrest" and listing, by Code section, the charges against him. The distinction between this case and *Strawder*, in that Jinks' prior charges were misdemeanors and not felonies, makes no difference; evidence of a prior arrest is itself prejudicial error. The issue is character, not impeachment, so drawing a line between crimes of moral turpitude or felonies and crimes which are mala prohibita is futile. Despite the fact that DUI is not a crime of moral turpitude, and thus cannot be used to impeach a witness, *Hall v. Hall*, 261 Ga. 188 (402 SE2d 726) (1991), it does

impugn a person's character. *Lancaster v. State*, 189 Ga. App. 149 (2) (375 SE2d 281) (1988) (officer's reference to defendant's prior "DUI [license] suspension" improperly injected character). See *Richardson v. State*, 199 Ga. App. 10, 11 (2) (403 SE2d 877) (1991), in which this Court held it was reversible error for an officer to state that he knew defendant from "previous arrest warrants." See also *Chapman v. State*, 202 Ga. App. 267, 268 (2) (414 SE2d 240) (1991) (prosecutor's statement that defendant had suspended driver's license impermissible); *Racquemore v. State*, 204 Ga. App. 88 (2) (418 SE2d 448) (1992) (testimony the defendant was on probation and living at halfway house impermissible); *Stanley v. State*, 250 Ga. 3 (1) (295 SE2d 315) (1982) (officer's testimony to effect defendant among those on whom police had previous cases impermissible).

As the evidence against Jinks was not overwhelming, it is not highly probable that the jury would have convicted him absent this prejudicial error. *Richardson*, supra at 12. He is entitled to a new trial free of it.

Admission of a fingerprint card does not in and of itself place the defendant's character in evidence. *Woodliff v. State*, 177 Ga. App. 508 (339 SE2d 777) (1986). The proper procedure is to redact from the card any information which might tend to violate OCGA § 24-2-2 or 24-9-20 (b). *Williams v. State*, 184 Ga. App. 124 (361 SE2d 15) (1987).

3. Jinks' remaining enumeration, challenging the authenticity of the fingerprint card, is moot.

*Judgment reversed. McMurray, P. J., and Smith, J., concur.*

DECIDED OCTOBER 23, 1997.

*Bruce S. Harvey, David S. West*, for appellant.
*William T. McBroom III, District Attorney, Daniel A. Hiatt, Assistant District Attorney*, for appellee.

