S01P0590. PRESNELL v. THE STATE.

(551 SE2d 723)

HUNSTEIN, Justice.

Virgil Delano Presnell, Jr. was convicted in 1976 of malice murder, kidnapping with bodily injury and other crimes and was sentenced to death for the murder. *Presnell v. State*, 241 Ga. 49 (243 SE2d 496) (1978), reversed and remanded as to sentence, *Presnell v. Georgia*, 439 U. S. 14 (99 SC 235, 58 LE2d 207) (1978), opinion vacated in part and death sentence upheld, *Presnell v. State*, 243 Ga. 131 (252 SE2d 625) (1979). In 1992, Presnell's death sentence was vacated during Federal habeas corpus proceedings. *Presnell v. Zant*, 959 F2d 1524 (11th Cir. 1992). A re-sentencing trial was held in 1999 and the jury recommended a death sentence after finding beyond a reasonable doubt that Presnell committed the murder while engaged in the commission of kidnapping with bodily injury and that the murder was outrageously or wantonly vile, horrible, or inhuman in that it involved torture and depravity of mind. OCGA § 17-10-30 (b) (2),

(7). Presnell appeals from the re-sentencing verdict.[1]

1. The evidence adduced at trial authorized the jury to find that on April 23, 1976, Presnell attempted to abduct a ten-year-old girl in Clayton County as she was walking home from school on a wooded trail. Although he grabbed her and threatened her with a knife, the girl managed to break free and escape. On May 3, 1976, Presnell staked out an elementary school in Cobb County and observed a ten-year-old girl walking home on a wooded trail. He returned the following day and waited on the trail. In his car, he had a rug and a jar of lubricant. When the ten-year-old girl came walking down the trail with her eight-year-old friend, Lori Ann Smith, Presnell abducted both girls. He taped their mouths shut and threatened to kill them if they did not cooperate; he also said he had a gun. They got into Presnell's blue Plymouth Duster. While Presnell was driving, he forced the older girl to orally sodomize him and inserted his finger into her vagina. They drove to a secluded area and Presnell walked the children into the woods. He carried the rug and the jar of lubricant. He made both girls undress and he raped the older girl on the rug. Her vagina was torn during the rape and began bleeding. Presnell then said that he was going to take Lori Ann back to his car and that the older girl should wait for him. On the way back to the car, Lori Ann tried to run away, but Presnell caught her and forced her face underwater in a creek, drowning her. The medical examiner testified that there was water, sand and plant matter in her lungs and stomach and that it would have taken one to several minutes for her to die. She had bruises on her neck and a bruise on her back from where Presnell apparently placed his knee. Presnell returned to the older girl and again forced her to orally sodomize him. He then locked her in his car trunk and began driving, but a tire went flat so he dropped her off in another wooded area after forcing her to commit oral sodomy again. Although Presnell told her he would return, the older girl heard the sound of a nearby gas station and walked there. She later gave police a description of Presnell and his blue Duster and stated that his tire was flat. Shortly thereafter the police spotted Presnell changing a tire on his blue Duster at his apartment complex not far from where he dropped off the older girl. Presnell initially denied everything but later admitted that he knew the location of the missing girl and led the police to Lori Ann's body. He also confessed. A search of Presnell's bedroom uncovered a handgun and child por-

---

[1] Voir dire in the re-sentencing trial commenced February 22, 1999 and the jury, selected March 8, fixed its sentence at death on March 16, 1999. Presnell's motion for a new trial, filed April 1, 1999 and amended June 20, 1999, was denied by the trial court on November 3, 2000. Presnell filed a notice of appeal on November 30, 2000, and the case was docketed to this Court on January 9, 2001. It was orally argued on April 16, 2001.

nography depicting young girls.

We find that the evidence presented at Presnell's re-sentencing trial was sufficient to enable any rational trier of fact to find the existence of the statutory aggravating circumstances beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also OCGA § 17-10-35 (c) (2). Contrary to Presnell's contention, the evidence was sufficient to authorize the jury to find beyond a reasonable doubt the two subparts of the (b) (7) aggravating circumstance, torture and depravity of mind. Presnell stalked elementary school children; planned his crimes; abducted the victim, an eight-year-old child, as she was walking home from school; taped her mouth shut; threatened to kill her; took her to a remote area; made her strip naked; forced her to watch as he raped and forced other sex acts on her friend; chased her as she tried to escape; and held her head underwater where she struggled for several minutes before dying. See *Hance v. State*, 245 Ga. 856, 861 (3) (268 SE2d 339) (1980) (psychological abuse inflicted by the defendant on the victim where it is shown to have resulted in severe mental anguish in anticipation of physical harm may amount to torture and depravity of mind); *Thomas v. State*, 245 Ga. 688 (7) (266 SE2d 499) (1980) (the young age of the victim is relevant to a consideration of torture and depravity of mind).

2. Presnell challenged the composition of the Cobb County Board of Jury Commissioners, which authorized Presnell's jury pool, on the basis that the board was composed of only five members instead of the six members required by OCGA § 15-12-20. Presnell has failed to show reversible error in the five-member composition of the board. See *Pope v. State*, 256 Ga. 195 (1) (c) (345 SE2d 831) (1986) (requiring a showing of such disregard of the essential and substantial provisions of OCGA § 15-12-20 as would vitiate the jury arrays); *Dillard v. State*, 177 Ga. App. 805 (4) (341 SE2d 310) (1986) (provisions of statute are merely directory and were not intended to vest procedural rights in criminal defendants). Moreover, OCGA § 15-12-20 (c) allows for each county to establish a lesser number of jury commissioners by local rule, and the trial court found that Cobb County had indeed promulgated such a rule requiring only five jury commissioners which, contrary to Presnell's contention, was not repealed or otherwise set aside.

3. Presnell complains that the trial court erroneously excused several prospective jurors for cause.

(a) Prospective jurors Brennan, Kidwell, Chun, Green, Fuller, and Allen were excused by the trial court due to their inability to vote for the death penalty as a possible sentence.

The proper standard for determining the disqualification of

a prospective juror based upon his views on capital punishment "is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " [Cit.]

*Greene v. State*, 268 Ga. 47, 48 (485 SE2d 741) (1997). A juror's bias for or against the death penalty does not need to be proved with unmistakable clarity; the relevant inquiry on appeal is whether the trial court's finding that a prospective juror is disqualified is supported by the record as a whole. Id. at 48-49. Often the trial court must resolve equivocal and contradictory answers by the prospective juror in determining whether his views would substantially impair his ability to consider all possible sentences. Id. at 49. For this reason, an appellate court must pay deference to the trial court's finding that a particular prospective juror is qualified or not qualified to serve on the jury. Id. "Whether to strike a juror for cause is within the discretion of the trial court and the trial court's rulings are proper absent some manifest abuse of discretion. [Cit.]" Id. at 50.

Prospective jurors Brennan, Chun, Green, Fuller, and Allen unequivocally stated that they could never vote to impose a death sentence under any circumstances. The trial court correctly found that they were disqualified. *Greene*, supra, 268 Ga. at 48-50; *Wainwright v. Witt*, 469 U. S. 412 (II) (105 SC 844, 83 LE2d 841) (1985). Prospective juror Kidwell initially stated that he did not "weigh strongly either way," but he then stated that he would pick life if given the choice between life or death and that he was "swaying" toward a conscientious objection to the death penalty as voir dire progressed. He reiterated that he would always pick life, then stated that he could perhaps vote for the death penalty for Adolf Hitler, but immediately reconsidered and stated that he could never vote for the death penalty in any fact situation that he could think of. Although Presnell correctly argues that a prospective juror is not disqualified for merely leaning for or against the death penalty, *Mize v. State*, 269 Ga. 646 (6) (d) (501 SE2d 219) (1998), the trial court was authorized to find from the totality of prospective juror Kidwell's responses that he would be substantially impaired in the performance of his duties as a juror because he could not vote for a death sentence. See *Greene*, supra at 48-50. The trial court did not abuse its discretion by excusing him. Id. at 50.

(b) Prospective juror Morton initially stated that she would be uncomfortable voting for death and was "probably" substantially impaired in her ability to vote for a death sentence. She then responded to a question about whether she could follow the judge's instructions by stating that she did not think she could put her beliefs aside in a death penalty situation and she said, "I don't know

that I could follow [the instructions] exclusively." She said she would not always vote for life, but she would vote for life more often; she also said she had a higher standard of what constitutes an aggravating circumstance. She thought her views might impair her ability to give the State a fair trial. She then stated that she could be convinced to vote for a death sentence for a serial murderer, but she then reconsidered and stated that she was not sure she could vote for the death penalty even in that kind of a case. She said, "That may be so," when asked if she could never vote for the death penalty even though she may support it philosophically. She said she was substantially impaired and added, "but I tend to be fairly wishy-washy. Somebody could come along and switch me back the other way." In response to the trial court's question about whether she could follow the law given to her by the judge, she replied that she would have a hard time following the law laid out for her and that "when someone's life is at stake, [she would not] be able to exclude [her] own set of parameters." The trial court granted the State's motion to excuse prospective juror Morton for cause after finding that she was substantially impaired in her ability to perform her juror duties because she had stated that she would follow her own criteria instead of the law as she was instructed. Based on the totality of prospective juror Morton's responses, the trial court was authorized to excuse her for cause for this reason. See *Greene*, supra, 268 Ga. at 52; *Crowe v. State*, 265 Ga. 582 (10) (458 SE2d 799) (1995).

(c) Prospective juror Vakilzadeh stated that he could not decide the case because the case was 23 years old and he "wasn't here at the beginning of the process." He said he had no knowledge of the evidence at the first trial and therefore could not agree with the prior verdict of guilty even though Presnell entered the trial already found guilty. Despite being told by the prosecutor that he would be presented with substantial evidence from 15 to 20 witnesses about the crimes for which Presnell had been convicted, prospective juror Vakilzadeh insisted, "I cannot judge because I do not have evidence from everything from A to Z." He repeatedly and unequivocally stated that he could not sit as a juror because he had not heard the evidence from the original trial. He said that, if he was selected as a juror, heard the case, and was sent to the jury room to deliberate, he would refuse to deliberate and would request more information. The trial court was authorized to excuse him for cause. See generally *Rucker v. State*, 270 Ga. 431 (2) (510 SE2d 816) (1999) (decision to excuse a potential juror for cause lies within sound discretion of trial court); *Garland v. State*, 263 Ga. 495 (1) (435 SE2d 431) (1993).

4. Presnell complains that the trial court erred by refusing to excuse for cause ten prospective jurors, Fowler, Feusting, Stanek, Croft, Kropacek, Cole, Payne, Sharp, Adair, and Gaines, due to their

alleged inability to consider a life sentence. See *Nance v. State*, 272 Ga. 217 (6) (526 SE2d 560) (2000); *Greene*, supra, 268 Ga. at 48. The record shows that prospective juror Fowler could vote to impose a life sentence and that she could set aside her past life experience when deliberating Presnell's sentence. See *Pace v. State*, 271 Ga. 829 (7), (8) (524 SE2d 490) (1999); *Cromartie v. State*, 270 Ga. 780 (9) (b) (514 SE2d 205) (1999). Although they leaned in favor of returning a death sentence, prospective jurors Feusting, Stanek, Croft, Kropacek, Cole, Payne and Sharp also indicated that they could vote for a life sentence. Therefore, based on the totality of their responses, the trial court was authorized to find that they were qualified to serve on the jury. See *Mize*, supra, 269 Ga. at 652 (6) (d). Prospective juror Adair stated that she believed a death sentence was the only appropriate punishment for the death of a child, but she also stated several times that she could vote for a life sentence. She later said that she would keep an "open mind" about the sentence for someone who had caused the death of a child. The trial court did not abuse its discretion by finding that she was qualified. See *Pace*, supra at 833-834 (7). Lastly, prospective juror Gaines stated that she could vote for a life sentence only if it was life without parole. After it was explained to her that a death sentence and a life sentence would be her two sentencing options, without reference to parole, Gaines said that she could set aside her reservations about parole and consider both possible sentences as instructed by the trial court. While the questioning of this prospective juror engendered much confusion and equivocation, we cannot conclude the trial court abused its discretion by finding that she was qualified to serve. See *Pace*, supra; *Greene*, supra at 48-50.

5. Because life without parole was not a sentencing option for Presnell, the trial court did not err by refusing to allow him to question prospective jurors about their opinions regarding parole. *Burgess v. State*, 264 Ga. 777 (3) (450 SE2d 680) (1994); *Davis v. State*, 263 Ga. 5 (7) (426 SE2d 844) (1993). Compare *Zellmer v. State*, 272 Ga. 735 (1) (534 SE2d 802) (2000) (setting forth standard applicable in cases where juries are required to consider parole eligibility pursuant to OCGA § 17-10-31.1).

6. "The scope of voir dire is largely left to the trial court's discretion, and the voir dire in this case was broad enough to ascertain the fairness and impartiality of the prospective jurors." (Footnote omitted.) *Barnes v. State*, 269 Ga. 345, 351-352 (10) (496 SE2d 674) (1998). We find no error with the jury selection.

7. The trial court did not err by denying Presnell's motion in limine regarding the State's use of the OCGA § 17-10-30 (b) (7) aggravating circumstance on the basis that it is unconstitutionally vague. *Taylor v. State*, 261 Ga. 287 (13) (a) (404 SE2d 255) (1991);

*Hance*, supra, 245 Ga. at 860 (3).

8. Presnell contends the trial court erred by denying his motion to suppress the gun and books of child pornography found in his bedroom. Presnell lived with his mother in an apartment. Two days after his arrest and confession, the police went to the apartment to look for the gun Presnell said he had possessed and that the older girl had noticed in his Duster when he dropped her off. Although they did not have a search warrant, police witnesses testified that Presnell's mother consented to a search of Presnell's bedroom and that she showed them the handgun, which she apparently owned but to which Presnell had access, in Presnell's headboard/bookcase. It was at that time that the police also noticed and seized the child pornography books. There was no evidence that Presnell's bedroom was locked or that he paid rent.

At trial, Presnell's mother corroborated the police testimony by admitting that she consented to a search of the bedroom. Although Presnell argues that his mother did not have authority to consent to a search of his bedroom, the evidence was sufficient to authorize the trial court to find that his mother had common control and authority over his bedroom and that she could therefore consent to a search of that area. See *United States v. Matlock*, 415 U. S. 164, 171 (II) (94 SC 988, 39 LE2d 242) (1974); *Smith v. State*, 264 Ga. 87 (2) (441 SE2d 241) (1994); *State v. West*, 237 Ga. App. 185 (514 SE2d 257) (1999). The trial court did not err by admitting the gun and the child pornography books into evidence.

9. There is no evidence to support Presnell's assertion that the magistrate who issued the search warrant for his Duster in 1976 was not neutral and detached because he had a pecuniary interest in issuing the warrant. See *Connally v. Georgia*, 429 U. S. 245 (97 SC 546, 50 LE2d 444) (1977). The record shows that the search warrant was facially valid and supported by probable cause. See *DeYoung v. State*, 268 Ga. 780 (7) (493 SE2d 157) (1997). Therefore, the evidence seized from his car was properly admitted.

10. Presnell claims that the trial court erred by having the jurors place their left hands on the Bible while being sworn in as jurors. However, Presnell did not object and thus has waived this argument on appeal. See *Pye v. State*, 269 Ga. 779, 787 (14) (505 SE2d 4) (1998) (failure to object at trial precludes a finding of reversible error on appeal). Furthermore, there was no reference to divine law or the contents of the Bible during the trial. Compare *Carruthers v. State*, 272 Ga. 306 (2) (528 SE2d 217) (2000); *Jones v. Kemp*, 706 FSupp. 1534 (IV) (A) (N.D. Ga. 1989).

11. The State was entitled to allege and prove the OCGA § 17-10-30 (b) (7) aggravating circumstance at the 1999 trial, even if it was not alleged at the 1976 trial. See *Zant v. Redd*, 249 Ga. 211 (2) (290

SE2d 36) (1982).

12. Presnell contends the trial court committed reversible error by allowing the State to use at trial a book, entitled *Radiant Identities* by author Jock Sturges which contained photographs of nude children, that the State claimed Presnell had ordered in 1996 from his prison cell. Pretermitting the issue whether the admission of the book was error because of the State's failure to authenticate it, we find that no reversible error occurred because the State established by independent evidence the facts sought to be proved by the book itself. The State's evidence properly established that Presnell was upset about the rejection of a book entitled *Radiant Identities* and, as a consequence, sent a letter to the warden requesting the prison rules and guidelines governing the receipt of materials containing pictures of nude children. Although Presnell claims that the admission of the book was highly inflammatory, the defense did not dispute that Presnell continued to be a pedophile and that *Radiant Identities* was the type of book to which a pedophile would be attracted.

13. (a) Presnell asserts that the trial court erroneously allowed the State to introduce improper evidence regarding his 1976 Florida conviction for contributing to the delinquency of a minor and his numerous Georgia arrests and convictions for motor vehicle thefts in the early 1970s. However, the record shows that the documentary evidence of these convictions and indictments was not presented to the jury but only placed in the record so the State could demonstrate it had a good faith basis for asking Presnell's mitigation witnesses on cross-examination about their knowledge of Presnell's criminal history. See *Medlock v. State*, 264 Ga. 697 (449 SE2d 596) (1994); *Christenson v. State*, 261 Ga. 80 (8) (c) (402 SE2d 41) (1991). These documents were sufficient to establish that the State had a good faith basis for its cross-examination questions about Presnell's arrests, convictions, and other bad acts. See *Medlock*, supra at 698-699.

(b) We find meritless Presnell's argument that the indictment arising out of his crimes against Lori Ann Smith and the surviving victim should have been redacted to remove the rape charge because he was convicted of only statutory rape. The 1976 jury convicted Presnell of rape without specifying whether it was forcible rape or statutory rape, and this Court affirmed that conviction "with direction that the defendant be sentenced by the trial court for the crime of statutory rape." *Presnell*, supra, 243 Ga. at 133. Furthermore, because the jury heard abundant evidence that Presnell raped the older girl and his guilt or innocence on this charge was not in issue, Presnell can show no harm from the introduction of the indictment reflecting the rape charge.

14. The crime scene and pre-autopsy photographs of the murder victim were properly admitted. See *Taylor v. State*, 271 Ga. 629 (2)

(523 SE2d 322) (1999); *Bright v. State*, 265 Ga. 265 (16) (455 SE2d 37) (1995).

15. Presnell asserts error in the State's introduction of his prison records at trial without first having them declassified as confidential and privileged state secrets in accordance with OCGA § 42-5-36. However, the prosecutor stated that he had subpoenaed the records from the Department of Corrections in compliance with OCGA § 42-5-36 (c), which allows for the release of these files upon subpoena. In addition, the record contains a sworn certificate authenticating the prison records, signed by the assistant director of legal services for the Department of Corrections and stating that OCGA § 42-5-36 had been complied with. See OCGA § 42-5-36 (d). We conclude that the release of the prison records for use at Presnell's trial was not improper.

16. Presnell contends the trial court erred by allowing the State to present impermissible victim-impact evidence from several witnesses. However, three of the witnesses about whom he complains, the surviving victim, her mother, and the doctor who treated the surviving victim's vaginal injuries, were not victim-impact witnesses. They testified solely as fact witnesses about the crimes, the search for the missing girls, and the injuries to the older girl. As such, their testimony was relevant and admissible. The State did present four victim-impact witnesses[2] whose proposed victim-impact testimony had been reviewed before trial and whose testimony at trial while reading their prepared statements did not exceed the acceptable boundaries for this kind of testimony. See *Pickren v. State*, 269 Ga. 453 (1) (500 SE2d 566) (1998); *Turner v. State*, 268 Ga. 213 (2) (486 SE2d 839) (1997). We find no error.

17. As mitigation evidence, Presnell presented the testimony of his aunt, who was only seven years older than Presnell and who had grown up with him. She testified about the poverty and rootlessness experienced by Presnell's family and their difficult childhood. On cross-examination, the State was properly permitted to question her about her lack of a criminal history as well as the lack of a criminal history among members of her family who had experienced similar conditions as Presnell. See *Pye*, supra, 269 Ga. at 788 (17). See generally OCGA § 24-9-64.

18. As the jury was returning to their hotel the night before closing arguments, a man walking past them in the hotel lobby said "Fry him" to some of the jurors. The bailiff accompanying the jurors,

---

[2] Those witnesses were the victim's mother, father, sister and cousin. Since the State did not introduce at trial the victim-impact statement prepared by the surviving victim, we find meritless Presnell's assertion that the trial court committed reversible error by approving its use.

Major Palmer, immediately detained the man and questioned him. Major Palmer determined, inter alia, that the man was visiting Atlanta from Nevada, that he was completely unfamiliar with Presnell's case, and that he did not know the jury was involved with a death penalty case. The man had simply seen their juror badges and thought it would be humorous to make such a remark. The next day, Major Palmer presented his report to the court and the trial judge questioned each juror individually and determined that none of the jurors would be affected by this remark during their deliberations. Presnell did not object to this procedure or move for a mistrial. We commend Major Palmer for the conscientious manner in which he executed his duties and find no error with the trial court's handling of this situation. See *Pruitt v. State*, 270 Ga. 745 (22) (514 SE2d 639) (1999). See also *Byrd v. State*, 262 Ga. 426 (1) (420 SE2d 748) (1992).

19. Although Presnell contends the prosecutor's closing argument was improper, he failed to object to any part of the argument. Thus, he can obtain appellate relief only if he can show that the allegedly improper argument in reasonable probability changed the result of his trial. *Whatley v. State*, 270 Ga. 296 (15) (509 SE2d 45) (1998). Based upon our review of the argument, we find no error that overcomes this procedural default. It was not improper for the prosecutor to argue Presnell's future dangerousness, *Jones v. State*, 273 Ga. 231 (4) (539 SE2d 154) (2000), and this argument was too indirect to constitute a reference to parole, which was never mentioned. On several occasions, the prosecutor also asked the jury to consider what was going through Lori Ann's mind when she was abducted, when she was made to undress, when she watched her friend being raped, and when she was being chased and drowned. The prosecutor was careful to cast this argument in terms of the mental pain and torture that would be experienced by an eight-year-old child in these circumstances, and he specifically tied her mental state to Presnell's depravity of mind. Psychological abuse inflicted on a victim before death is relevant to a consideration of a defendant's depravity of mind. See *Hance*, supra, 245 Ga. at 860 (3). We therefore conclude that this argument was not a "golden rule" argument that invited the jury to place themselves in the victim's position. See *McClain v. State*, 267 Ga. 378 (3) (a) (477 SE2d 814) (1996). The prosecutor's analogy of how a plastic cup will split if you try to push a can through it was a relevant illustration of the injuries sustained by the older girl during the rape. See generally *Conner v. State*, 251 Ga. 113 (6) (303 SE2d 266) (1983) (the range of discussion and choice of illustrations during closing argument are very wide). It was also not improper for the prosecutor to argue that Presnell showed no mercy to the victims in this case and did not display any remorse while committing the crimes or during his confession. See *Crowe*, supra, 265

Ga. at 592 (18) (c); *Ledford v. State*, 264 Ga. 60 (18) (b) (439 SE2d 917) (1994). Presnell's arguments regarding the prosecutor's reference to the *Radiant Identities* book, the indictment, crime photographs, and the malice murder charge are controlled adversely to him by our rulings in Divisions 12, 13 (b), and 14, supra and Division 21, infra. Accordingly, we find no error with the prosecutor's closing argument.

20. There was no error with the jury charge. The trial court was not required to instruct the jury on residual doubt or any other specific mitigating circumstance as long as it charged on mitigating evidence in general. See *Carruthers*, supra, 272 Ga. at 317 (18); *Terrell v. State*, 271 Ga. 783 (11) (523 SE2d 294) (1999). The trial court also did not err by refusing to charge on electrocution as Georgia's method of execution, see *Hill v. State*, 263 Ga. 37 (20) (427 SE2d 770) (1993); on life without parole when this was not a possible sentence for Presnell, *McMichen v. State*, 265 Ga. 598 (21) (458 SE2d 833) (1995); and that the jury did not have to find mitigating circumstances before it could consider them. See *Terrell*, supra. The trial court properly instructed the jury that it could return a life sentence regardless of the existence or non-existence of any mitigating circumstances. Id.[3]

21. The trial court did not err by correctly charging the jury on the elements of malice murder because Presnell had already been convicted of malice murder and murder was an element of the statutory aggravating circumstances. The jury charge on the OCGA § 17-10-30 (b) (7) aggravating circumstance was not improper. See *Holiday v. State*, 258 Ga. 393 (19) (b) (369 SE2d 241) (1988); *West v. State*, 252 Ga. 156, 161-162 (313 SE2d 67) (1984).

22. Presnell's death sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor. OCGA § 17-10-35 (c) (1). As we held in 1978, *Presnell*, supra, 241 Ga. at 64, the death sentence in this case is not excessive or disproportionate to the penalty imposed in similar cases, considering both the crimes and the defendant. OCGA § 17-10-35 (c) (3). The similar cases listed in the Appendix support the imposition of the death penalty in this case in that they all involve a murder during a kidnapping with bodily injury or the OCGA § 17-10-30 (b) (7) aggravating circumstance.

*Judgment affirmed. All the Justices concur.*

---

[3] Appended to Presnell's enumeration regarding the refused jury charges is his one-sentence contention that OCGA § 17-10-16, which provides that a jury may consider a sentence of life without parole upon agreement by the State, is unconstitutional. This argument is controlled adversely to Presnell by *Freeman v. State*, 264 Ga. 27 (2) (a) (440 SE2d 181) (1994).

APPENDIX.

*Johnson v. State*, 271 Ga. 375 (519 SE2d 221) (1999); *Gulley v. State*, 271 Ga. 337 (519 SE2d 655) (1999); *Pruitt v. State*, 270 Ga. 745 (514 SE2d 639) (1999); *Pye v. State*, 269 Ga. 779 (505 SE2d 4) (1998); *Wellons v. State*, 266 Ga. 77 (463 SE2d 868) (1995); *Hall v. State*, 261 Ga. 778 (415 SE2d 158) (1991); *Pruitt v. State*, 258 Ga. 583 (373 SE2d 192) (1988); *Williams v. State*, 258 Ga. 281 (368 SE2d 742) (1988); *Parker v. State*, 256 Ga. 543 (350 SE2d 570) (1986); *Devier v. State*, 253 Ga. 604 (323 SE2d 150) (1984); *Felker v. State*, 252 Ga. 351 (314 SE2d 621) (1984); *Waters v. State*, 248 Ga. 355 (283 SE2d 238) (1981); *Messer v. State*, 247 Ga. 316 (276 SE2d 15) (1981).

DECIDED JULY 16, 2001 —
RECONSIDERATION DENIED SEPTEMBER 19, 2001.

*Marc D. Cella, John R. Greco, Mitchell D. Durham, Charlotta Norby, Michael Mears,* for appellant.

*Patrick H. Head, District Attorney, Maria B. Golick, Dana J. Norman, Russell J. Parker, Jack E. Mallard, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Beth A. Burton, Assistant Attorney General,* for appellee.