A03A1461. JOHNSON v. THE STATE.
(587 SE2d 775)

Barnes, Judge.

Kyle Evan Johnson appeals his conviction for rape, for which he was sentenced as a recidivist to life without parole, as well as his convictions for armed robbery, burglary, two counts of aggravated assault, three counts of false imprisonment, sexual battery, and possession of a firearm during the commission of a crime, for which he received additional consecutive sentences. He contends that the trial court erred in (1) denying his motion to suppress the evidence resulting from a warrantless search of his car; (2) allowing the State to admit evidence showing his bad character; and (3) denying his motion for a new trial because his trial counsel was ineffective. For the reasons that follow, we affirm the convictions.

A patrol officer responding to a suspicious persons call stopped Johnson as he was walking away from a Cobb County motel in the early morning hours of March 24, 2001. Johnson was dressed in dark clothing, which fit the description of the person reported, was looking nervously back over his shoulder at the lobby and down the street, had one hand in his pocket, and was carrying an object in his other hand. A black t-shirt hung loosely around his neck, with his head through the neck but his arms outside the armholes. The officer asked what he was doing, and Johnson said he had inquired about renting a room but the motel was full. The motel clerk came out of the lobby, pointed to Johnson, and said, "That's him. What were you doing on the third floor?"

Johnson, who still had his hand in his pocket, said he had no weapon, and the officer asked him to put down the object in his hand, which was a camera in the shape of the cartoon character Tasmanian Devil, and lace his hands behind his head. By that time backup officers had arrived, and when the first officer felt a gun in Johnson's pants the officers took him to the floor, cuffed him, and retrieved a Beretta Tomcat .32 semiautomatic pistol from his pocket. The officers placed Johnson under arrest for carrying a concealed weapon and

searched his pockets, where they found black gloves, latex gloves, a bottle of lotion, and two condoms.

The arresting officer testified that after Johnson was secured, the officer was concerned that someone else might be in the vicinity who could pose a danger. When asked how he got to the scene, Johnson told the officer that he had driven his car, which was parked behind the motel. The officers located the car, inventoried the contents, and towed it to the police impound lot. Among the items found in Johnson's car were night vision goggles, a loaded magazine for the Beretta, several keycards from different hotels, a military ID and credit card in someone else's name, additional condoms, three Polaroid pictures of bound, naked women, and photographs of other women.

After the car was impounded, the Cobb County detective contacted a Marietta detective, who confirmed that a Tasmanian Devil camera had been stolen from a family who was assaulted two weeks earlier in a motel room invasion. The Marietta detective also identified two of the pictures, which were of two of the assault victims. The detective obtained a warrant to search Johnson's car thoroughly, which uncovered three keycards from different hotels, a black knit skullcap, two condoms, and a roll of tape. They also obtained a search warrant for his residence, in which they found a box of latex gloves, a box, manual, and ownership papers for a Beretta Tomcat .32, a night vision goggles box, pictures of naked women from behind, women's undergarments, a Polaroid instant camera, an arrest citation for soliciting sex, dated a year earlier, made out to Johnson and including the address of the location being searched, and a photograph of Johnson with his name on it.

Johnson was tried for the assault on a family two weeks before his arrest, in which he entered a locked motel room and woke a husband, wife, and niece at gunpoint. He threatened to kill the couple's sixteen-month-old sleeping daughter, forced the three adults to strip, tied the husband and niece from behind with pillowcases by their wrists and ankles, and raped the wife. After fondling the niece and taking pictures of the women with the family's Tasmanian Devil instant camera, Johnson left with the pictures and camera. The family could not identify him because his face was covered during the assault, and medical personnel could retrieve from the victim no bodily fluid belonging to the assailant.

The State introduced evidence of a similar transaction three months before Johnson's arrest to establish his identity, bent of mind, and course of conduct. A couple testified that a man with his face covered and wearing dark clothing somehow got into their locked Gwinnett County motel room in December 2000 and woke them at gunpoint. The male victim identified the assailant as Johnson. They

were sleeping without clothes on, and Johnson tied the boyfriend from behind with pillowcases by his wrists and ankles. He then raped and sodomized the woman, stole $650 and some pictures of the female victim and a friend, and left the motel room. The victims called the police and were taken to the Gwinnett Sexual Assault Center, where a nurse extracted semen from the female victim. A forensic biologist with the State Crime Lab testified that the DNA from that semen sample matched the DNA from Johnson's blood that was obtained pursuant to a search warrant. The female victim identified pictures of herself and her friend that were taken from her motel room and found in Johnson's car.

The jury convicted Johnson on all counts, and the State presented evidence that Johnson pled guilty in 1987 to the rape of one woman on December 16, 1986, and to kidnapping, false imprisonment, and aggravated assault with intent to rape another woman on the same day. The trial court sentenced him under OCGA § 17-10-7 (b) (2) to life without parole for the rape and armed robbery convictions, to be served consecutively, and to additional consecutive sentences on the remaining convictions.

1. Johnson contends that the trial court erred in denying his motion to suppress evidence found during the inventory of his car at the scene, because the officers did not need to impound the car, which was parked on private property. He asserts the trial court should also have suppressed the evidence found in his residence and the DNA evidence because the warrants for those searches were based on evidence illegally seized from his car. "The state may inventory the contents of a car that has been *lawfully* impounded. Justification of an inventory search is thus premised upon the validity of the impoundment." (Citations and punctuation omitted.) *State v. Lowe*, 224 Ga. App. 228, 229 (480 SE2d 611) (1997). While the police may not impound a car to search for contraband, they may impound a vehicle if they must take charge of it for some reason. Id. at 230. "[T]he ultimate test for the validity of the police's conduct is whether, under the circumstances then confronting the police, their conduct was reasonable within the meaning of the Fourth Amendment." (Citation and punctuation omitted.) Id.

In this case, Johnson was arrested in the middle of the night for carrying a concealed weapon while walking away from a motel where the clerk had reported him to the police as a suspicious person. He was alone. His car was parked in the back of the motel, and he was neither renting a room nor visiting a guest of the motel. The clerk testified that the motel's policy was to tow unclaimed cars parked in their lot, and the detective at the scene testified that the Cobb County Police Department's standard operating procedure dictated that he impound the car so it would not be stolen or towed by the

motel. Department policy also directed him to inventory the contents of the car before impounding, to protect the department from a suspect later claiming that valuable items were missing from his car.

Considering the circumstances of Johnson's arrest, the detective's decision to impound the car was reasonable within the meaning of the Fourth Amendment. Accordingly, the trial court did not err in denying his motion to suppress items inventoried or subsequently seized pursuant to search warrants.

2. Johnson contends the trial court erred in allowing the State to introduce evidence that impugned his character, specifically the arrest citation for soliciting sex and his mug shot with his name on it. While the trial court redacted the prisoner number, prison name, and date from the picture, Johnson argues that it is still obviously a mug shot, and that fact along with the stale date of January 12, 1988, renders the picture more prejudicial than probative.

The State introduced this evidence in rebuttal to establish that Johnson lived in the room where the police executed a search warrant and found pictures of naked women from behind and a Polaroid instant camera, among other things. On cross-examination, Johnson asked the detective how he knew it was Johnson's room, since no one was home at the time and no one ever returned to the house to interview the residents. He also asked whether the detective knew when Johnson had last lived in the room, and suggested it could have been more than two years ago. The detective responded that he found mail addressed to Johnson in the room, but did not recall the dates on the envelopes. On redirect, the State introduced the arrest citation dated a year earlier and made out to Johnson, with the residence address on it, and the picture with the name "Johnson" on it, to show that Johnson lived there.

> Material evidence is not rendered inadmissible merely because it incidentally places a defendant's character in issue. But there must be some logical connection between the two, from which it can be said that proof of the one tends to establish the other. An exception to exclusion is where the evidence may bear upon the question of the identity of the accused, or articles connected with the offense.

(Citations and punctuation omitted.) *Rhodes v. State*, 200 Ga. App. 193, 197 (5) (407 SE2d 442) (1991). Johnson raised the issue that he might not live in the room that the police searched. While the mug shot was dated long ago, the fact that it was Johnson's image and had his name on it made it relevant to establish the fact that he lived in the room, and the prison information was properly redacted. The trial court did not abuse its discretion in allowing the State to intro-

duce the picture. *Keller v. State*, 231 Ga. App. 546, 548 (4) (499 SE2d 713) (1998).

As to the citation, the trial court should have redacted the information related to the offense for which Johnson was arrested. The relevant information was the name, date, and address on the ticket, not the offense. The fact that the offense was a sex-related crime makes it particularly prejudicial in a rape case, and its admission unredacted was error. *Jinks v. State*, 229 Ga. App. 18, 19-20 (2) (493 SE2d 214) (1997). Considering the overwhelming evidence of Johnson's guilt, however, it is not highly probable that the jury would have acquitted him absent this prejudicial error. *Minter v. State*, 258 Ga. 629, 630-631 (2) (373 SE2d 359) (1988), overruled in part on other grounds, *Jones v. State*, 272 Ga. 900, 903 (2) (537 SE2d 80) (2000).

3. Johnson argues that his trial counsel was ineffective.

In order to establish a claim of ineffective assistance of counsel, the appellant must show both that counsel's performance was deficient and that a reasonable probability exists that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U. S. 668, 695-696 (104 SC 2052, 80 LE2d 674) (1984).

*Davis v. State*, 221 Ga. App. 131, 133 (3) (470 SE2d 520) (1996).

(a) Johnson contends that his trial counsel was ineffective in the way he handled cross-examination of the rape victim, who returned to the witness stand and changed her testimony about whether Johnson's penis had penetrated her vagina, a necessary element to the rape charge. The victim testified through a translator. On direct the first time she was on the stand, the State asked her, "[D]id his organ go inside [your] body?" She replied, "Honestly, I could not tell you because I make believe that it wasn't me, that I wasn't there."

After three other witnesses testified, the State recalled the victim to the stand. Johnson voir dired her outside the jury's presence to see if she had discussed the case with her husband or niece. The following exchange took place, again through a translator:

A Somebody — what happened is that somebody said that I was wrong on one of the questions.

. . .

Q Which question did your husband tell you that you were wrong about?
A That if he penetrated me. What I understood was did he ejaculate inside me. If you recall, they asked me how long has it taken and I said a few minutes, several minutes.

Q Okay. How did your husband, if you know, please, [victim], how did your husband find out what your testimony consisted of, do you know?

A Well, that's — that's the reason they said that the court was not finished and that I was wrong in answering that question. First I say I don't think I was wrong, but then I was mistaken in between penetration and ejaculation. . . . I said why did I have to answer wrong because it is obvious that he penetrated me. I don't know if he ejaculated. You must take into consideration that I say thanks God nothing happened to my niece because it happens to me, and I'm sorry if I was wrong with that question. It is obvious and there is proof.

Johnson argued that the witness had violated the Rule of Sequestration and should not be permitted to testify.

The victim's husband then testified, also outside the jury's presence, that the prosecutor asked him out in the hall after his wife testified whether he had seen Johnson penetrate his wife. The prosecutor said he asked the husband if he had seen that because when the prosecutor asked the victim if Johnson's penis was in her, she answered that she was blocking that out. No further exchange took place between the husband and the prosecutor, and the husband took it upon himself to ask the victim if she had understood the question, because the Spanish phrase used could be interpreted to mean penetrate or ejaculate. The translator then discussed with the lawyers the Spanish terms for various parts of the male anatomy. The trial court ruled that violations of the rule went to the weight and credibility of the witness and allowed the State to recall the victim. On recall, the victim initially denied that she had discussed the matter with her husband, but claimed she overheard him talking to himself about it. Johnson then asked for a mistrial due to the rule violation, which the trial court denied. The husband testified again before the jury, repeating that the prosecutor had asked if his wife had understood the question, and that the husband had then asked his wife the same thing.

Johnson argues on appeal that his trial counsel was ineffective because he failed to bring to the jury's attention the translator's explanation of his literal translation of the question at issue, and also failed to move to continue the trial to obtain a transcript of the voir dire testimony or to request that the testimony be read to the jury. A review of the testimony by all of the parties involved regarding the victim's testimony on this point, which covers 22 pages, reveals that trial counsel thoroughly cross-examined the victim regarding her changed testimony, and pointed out that she had testified just min-

utes before that she had talked to her husband about her testimony. He argued to the jury that her changed testimony was suspect. While some of the additional points Johnson now argues his trial counsel should have raised at trial might have been relevant, not raising them does not render his assistance ineffective. They are very minor points, and considering the record as a whole, the trial court's finding that Johnson's trial counsel was effective was not clearly erroneous on this ground. *Milliken v. State*, 230 Ga. App. 810, 813 (2) (b) (498 SE2d 127) (1998).

(b) Johnson argues that, assuming his trial counsel opened the door to the admission of bad character evidence, he was ineffective. Trial counsel did open the door when he cross-examined the detective who executed the search warrant about whether Johnson really lived there, a sound trial strategy. "Whether, in hindsight, this tactical decision appears to have been wise or unwise is not determinative of whether it constituted the ineffective assistance of trial counsel." *Marshall v. State*, 275 Ga. 740, 745 (10) (571 SE2d 761) (2002).

(c) Finally, Johnson argues that his trial counsel was ineffective for failing to object to the prosecution's "Golden Rule" argument in closing. Johnson developed evidence that the victim appeared to be calm after the attack. The State anticipated that Johnson would argue that the victim's demeanor afterward showed that she was not raped, so the State explained why she was so calm. The State reminded the jurors that Johnson had threatened to shoot the victim's baby in the head if she did not comply with his demands.

> You think [the victim] maybe was happy that she got off with being raped instead of having to watch her baby's brains get splattered all over the wall? How do you think she felt about that? How do you think any parent would feel about that? Wouldn't that be somebody's main concern at that point? Just about any parent would say, hey, do whatever you want to do to me. I'll be happy if you leave here and that baby is still asleep and alive.

"A 'golden rule' argument is one that, regardless of the nomenclature used, asks the jurors to place themselves in a victim's position," *Braithwaite v. State*, 275 Ga. 884, 885 (2) (b) (572 SE2d 612) (2002), and we must carefully scrutinize such arguments. Id. Nevertheless, this was not the classic golden rule argument in which the jurors were asked to place themselves in the victim's place in regard to the crime itself. See *White v. State*, 208 Ga. App. 885, 890 (6) (432 SE2d 562) (1993). The State was not arguing improperly that the jurors should relive the rape, but that they should consider how a person could appear calm or even relieved after such a heinous

attack. The trial court did not err in concluding that Johnson's trial counsel was not ineffective for failing to object to this argument. *Presnell v. State*, 274 Ga. 246, 255 (19) (551 SE2d 723) (2001) (proper to argue what the victim experienced during the charged offense when her state of mind is relevant).

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED SEPTEMBER 10, 2003 —
RECONSIDERATION DENIED SEPTEMBER 29, 2003.

*Lynn G. Fant*, for appellant.

*Patrick H. Head, District Attorney, Henry R. Thompson, Dana J. Norman, Assistant District Attorneys*, for appellee.