S04A0343. CIAK v. THE STATE.

(597 SE2d 392)

BENHAM, Justice.

This appeal places before the Court a challenge to the constitutionality of OCGA § 40-8-73.1, the statute governing the use of tinted automobile windows in Georgia, which provides in pertinent part that

> it shall be unlawful for any resident person to operate a motor vehicle in this state . . . [w]hich has material and glazing applied . . . to . . . the side or door windows, which . . . reduce light transmission through the . . . window to less than 32 percent or increase light reflectance to more than 20 percent. . . . The provisions of . . . this Code section shall not apply to . . . [a] vehicle, the windows or windshields of which have been tinted or darkened before factory delivery . . . [or] [a]ny motor vehicle not registered in this state. . . .

A police officer stopped Ciak solely because he suspected the windows of the Georgia-registered car she was driving violated OCGA § 40-8-73.1. Smelling alcohol, the officer commenced a DUI investigation, ultimately arresting Ciak for DUI. She was not charged at that time with a violation of OCGA § 40-8-73.1 because a test at the arrest site showed the windows were not tinted beyond the 32 percent limit, but was eventually charged by accusation with that offense. Ciak filed a motion to suppress all evidence derived from the traffic stop, contending OCGA § 40-8-73.1 is facially unconstitutional as a denial of equal protection. The trial court denied the motion, holding that Ciak failed to prove she was similarly situated to others who are treated differently and that the statute is rationally related to the purpose of

officer safety. This Court granted Ciak's application for interlocutory review and requested the parties to address the constitutionality of OCGA § 40-8-73.1.

1. Ciak contends the statute denies equal protection of the law because it applies only to residents of Georgia. The trial court rejected that argument on two bases, first that Ciak was not situated similarly to a class being treated differently, and second that the legislature had legitimately applied piecemeal remedies to achieve the statute's purpose of promoting the safety of law enforcement personnel. We disagree with both holdings.

The trial court's order identifies the class of persons affected by the statute as drivers of all vehicles on Georgia roads, but the class to be considered here is actually somewhat smaller. The class of persons affected by the statute comprises the drivers of all motor vehicles which are registered in Georgia and have tinted windows. Within that class, the statute distinguishes between residents of this state and nonresidents.[1] It is that distinction which Ciak contends denies her equal protection of the law. Her argument is supported by the holding of the U. S. Supreme Court in *Williams v. Vermont*, 472 U. S. 14, 23 (105 SC 2465, 86 LE2d 11) (1985): "A State may not treat those within its borders unequally solely on the basis of their different residences. . . ."

When, as here, neither a suspect class nor a fundamental right is affected by the challenged statute, an equal protection challenge is assessed under the "rational relationship" test, under which a legislative classification will not be found to deny equal protection if the classification bears a direct relation to the purpose of the legislation. *Love v. State*, 271 Ga. 398 (2), (3) (517 SE2d 53) (1999). As several other jurisdictions have noted, the purpose of laws restricting the degree to which vehicle windows may be tinted is to enhance the safety of law enforcement officers approaching vehicles they have stopped. See, e.g., *Tucker v. United States*, 708 A2d 645, 648 (D.C. App. 1998); *People v. Pitts*, 222 Mich. App. 260, 274 (564 NW2d 93) (1997); *People v. Strawn*, 210 Ill. App. 3d 783, 788 (569 NE2d 269) (1991). It being self-evident that nonresidents can be as dangerous to police officers as residents, we perceive no rational connection between the residence of the driver of a vehicle and the goal of improving law enforcement officer safety during traffic stops. Thus, the distinction drawn by the statute violates the constitutional guarantee of

---

[1] Compare the window-tinting statutes of other states which apply to all persons without regard to residence, e.g., A.C.A. § 27-37-306 (Ark.); 625 ILCS 5/12-503 (a) (Ill.); KRS § 189.110 (3) (Ky.); Miss. Code Ann. § 63-7-59 (1); O.R.C. Ann. § 4513.241 (C) (Ohio); T.C.A. § 55-9-107 (a) (1) (Tenn.); Utah Code Ann. § 41-6-149 (1) (Utah); Va. Code Ann. § 46.2-1052 (A).

equal protection of the laws because it distinguishes between similarly situated persons, drivers of cars registered in Georgia, on a basis which bears no reasonable relation to the purpose of the statute.

The trial court applied to the statute the holding in *Farley v. State*, 272 Ga. 432, 434 (531 SE2d 100) (2000), that " '[a] legislature may address a problem "one step at a time," or even "select one phase of one field and apply a remedy there, neglecting the others." [Cits.]' " However, we were presented in *Farley* with a situation in which there were two different types of vehicles with different safety records, making it reasonable for the legislature to start with one or to choose a remedy only pertaining to the class of vehicles producing more injuries. This case presents no such dichotomy and the situation governed by the statute at issue here offers no "choice of evils" decision for legislative action. Thus, the difference in treatment of residents and nonresidents by OCGA § 40-8-73.1 cannot be justified by the principles stated in *Farley*. The trial court erred in ruling the statute is constitutional.

2. The unconstitutionality of the statute does not, however, require the grant of the motion to suppress the evidence resulting from the traffic stop. In *Michigan v. DeFillippo*, 443 U. S. 31, 37 (99 SC 2627, 61 LE2d 343) (1979), the U. S. Supreme Court posed the question "whether . . . it can be said that the officer lacked probable cause to believe that the conduct he observed . . . constituted a violation of law simply because he should have known the ordinance was invalid and would be judicially declared unconstitutional. The answer is clearly negative." This principle was applied in *State v. Smith*, 652 NW2d 546 (Minn. App. 2002), where the Minnesota Court of Appeals reversed a trial court's judgment suppressing evidence seized pursuant to an arrest stemming from a traffic stop based on a tinted-window statute which the trial court had declared unconstitutional. The appellate court, assuming the correctness of the ruling on the statute's constitutionality, nonetheless reversed the suppression, quoting *DeFillippo*, supra, 443 U. S. at 38:

> Police are charged to enforce laws until and unless they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality — with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws. Society would be ill-served if its police officers took it upon themselves to determine which laws are and which laws are not constitutionally entitled to enforcement.

See also *People v. Macleod*, 254 Mich. App. 222 (656 NW2d 844) (2002) (validity of arrest not affected by subsequent judicial determination ordinance is unconstitutional). Compare *People v. McNeil*, 96 Cal. App. 4th 1302 (118 Cal. Rptr. 2d 54) (2002) (*Michigan v. DeFillippo* distinguishable where there was controlling precedent that ordinance was unenforceable). The principle stated in *DeFillippo* applies to the present case and compels the conclusion that our holding in this case that OCGA § 40-8-73.1 is unconstitutional does not, of itself, require suppression of the evidence seized during the traffic stop.

3. Ciak also contended in the trial court that the traffic stop based on OCGA § 40-8-73.1 could not be valid because the statute contains too many elements which cannot be ascertained by an officer merely observing a vehicle with tinted windows. Specifically, Ciak noted that an officer cannot determine before stopping the car whether the driver is a resident or nonresident, whether the tint was applied by the manufacturer or as an after-market modification, or whether the tint of a particular window meets the requirements of the statute. The trial court rejected that argument, as do we.

What Georgia law requires to justify an investigatory stop of a vehicle is an articulable suspicion of wrongdoing.

> "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. . . . This specific, articulable suspicion must be based on the totality of the circumstances — e.g., objective observations, information from police reports, the modes or patterns of certain kinds of lawbreakers, and the inferences drawn and deductions made by a trained law enforcement officer." [Cit.]

*State v. Wright*, 221 Ga. App. 202, 204 (3) (470 SE2d 916) (1996). The undisputed facts before the trial court were that the officer conducting the stop in this case observed Ciak's car, noted that the windows were tinted a dark purple, and believed the tinting appeared darker than that permitted by OCGA § 40-8-73.1. This is not a case like *Hameen v. State*, 246 Ga. App. 599 (541 SE2d 668) (2000), where a stop based on OCGA § 40-8-73.1 was held invalid because the presence of an out-of-state license tag was enough to show no violation of the statute could have occurred. By contrast, the officer who made the stop here observed a Georgia-registered vehicle with dark purple windows. The fact that the officer determined from a field test that a citation for violating OCGA § 40-8-73.1 was not warranted does not render the stop improper. *State v. Wright*, supra, 221 Ga. App. at 205 (fact that officer did not charge defendant with offenses on which stop based is immaterial).

Applying the principles stated in *State v. Wright*, supra, we conclude that the objective observations of a trained officer were sufficient to support a reasonable suspicion that a violation of OCGA § 40-8-73.1 was occurring in his presence. The trial court did not err in denying the motion to suppress.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 7, 2004.

*Barry Staples, Hix H. Green III*, for appellant.
*Barry E. Morgan, Solicitor-General, Thomas J. Campbell, Assistant Solicitor-General*, for appellee.