## A07A0891. CARTER v. THE STATE.
### (651 SE2d 759)

ADAMS, Judge.

We granted Shaun A. Carter's interlocutory appeal from the denial of his motion to suppress evidence. We now affirm.

This Court is guided by three principles when interpreting the trial court's findings of facts on a motion to suppress evidence:

> First, . . . [t]he trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's finding and judgment.

(Citations and punctuation omitted.) *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

Construing the facts in that manner, the evidence shows that on March 27, 2006, Officer Blevins responded to a report that an armed person was in the parking lot of a hotel in downtown Atlanta between 2:00 and 3:00 in the morning. Some of the surrounding streets were known as high-prostitution and high-narcotics areas. The report was based on an anonymous tip, and there was no information to suggest that the tip was reliable. Officer Blevins received a description of the person as a white male wearing blue jeans, black boots, and a shirt with "S.W.A.T." (special weapons and tactics) printed on its front.[1] When Blevins and his backup officer, Boyd, arrived at the hotel approximately two minutes later, they saw Carter, who was the only person in the parking lot, and Carter fit the description. Blevins and Boyd shined their flashlights upon Carter and his black Jeep, which had dark-tinted windows, and saw Carter, who was standing outside the Jeep, shut the front door and reach into the open rear door. He then shut the rear door and began approaching the two officers with a briefcase in one hand.

As Carter approached, Blevins told him twice to show his hands or to put his hands over his head, but Carter failed to comply. Blevins and Boyd, who were concerned for their safety and for Carter's, then drew their service weapons and pointed them at Carter. Carter responded by putting his briefcase down, turning his back to the

---

[1] Although there were discrepancies between the description that Officer Blevins received and the dispatcher's printed record of the anonymous call, we construe the evidence in favor of the court's decision.

officers, and placing his hands behind his back. Boyd then placed Carter in handcuffs and performed a frisk for weapons. The frisk produced a .40 caliber pistol located in Carter's waistband and three knives concealed in his clothing.

Next Carter told Blevins he was a security guard and that he had a permit for the pistol in his wallet, which was inside the Jeep. Carter asked if he could go to the Jeep to retrieve it, but Blevins told him he could not. Carter then gave Blevins permission to take his car keys out of his right front pocket, go into the Jeep, and retrieve the gun permit from his wallet. Blevins entered the Jeep and found the wallet, but it did not contain a gun permit. Instead, Blevins found another handgun in plain view on the Jeep's front seat, as well as a fully loaded 9 millimeter magazine. Blevins also found what he believed to be narcotics in an unlocked gun case. At this point, Carter was placed in custody, under arrest. The officers then searched Carter and the vehicle incident to the arrest. They discovered yet another handgun and handcuff keys hidden in his boot, as well as tasers, black jacks, an asp baton, throwing knives, and assorted ammunition in the car.

Carter was subsequently indicted for trafficking in cocaine, trafficking in methamphetamine, four counts of possession of a firearm during the commission of a felony, three counts of possession of a knife during the commission of a felony, two counts of carrying a concealed weapon, and one count of carrying a pistol without a license.

Carter sought to suppress all the evidence on the ground that without some indicia of reliability regarding the anonymous tipster or enough information in the tip to be able to predict Carter's future behavior, a *Terry* stop was not justified.[2] In denying the motion to suppress, the superior court found that the officers acted reasonably because of the time of day, the nature of the call, and Carter's actions at the scene.

Within the framework of Fourth Amendment law, the case of *Florida v. J. L.*, 529 U. S. 266 (120 SC 1375, 146 LE2d 254) (2000), establishes that an anonymous tip of a person with a weapon is insufficient, standing alone, to justify a *Terry*-type, temporary seizure and pat-down for weapons. Id. at 270-271. Also, an accurate description of the suspect does not help in that it "does not show that the tipster has knowledge of concealed criminal activity," although it does help the police correctly identify the person. Id. at 272 (II). Finally, the same case makes clear that there is no firearm exception to the standard *Terry* analysis because "*Terry*'s rule, which permits protective police searches on the basis of reasonable suspicion rather

---

[2] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

than demanding that officers meet the higher standard of probable cause, responds to this very concern." Id.

But the Supreme Court expressly did not reach the exact issue present here. The court in *Florida v. J. L.* noted that the defendant there made "no threatening or otherwise unusual movements." Id. at 268 (I). Here, Carter, who was possibly armed, reacted to the officers' presence by reaching in his car and then approaching them. These actions reasonably raised a concern in the officers for their safety, which justified their need to take some action. Carter then twice refused to show his hands or to put his hands over his head, which reasonably exacerbated those same fears. The trial court concluded that the officers were reasonably reacting to an unsafe situation when they drew their weapons, detained Carter, and performed a pat-down search.

The finding is not clearly erroneous or contrary to law. An anonymous tip may be paired with the surrounding circumstances when evaluating an officer's basis for a *Terry* stop, and the totality-of-the-circumstances approach takes into account facts known to the officers from personal observation. *Alabama v. White*, 496 U. S. 325, 330 (110 SC 2412, 110 LE2d 301) (1990). Also, there is no legal requirement that the officers had to "be absolutely certain that [the defendant was] armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio*, 392 U. S. 1, 27 (II) (88 SC 1868, 20 LE2d 889) (1968). Given the totality of the circumstances — the anonymous tip and the officers' personal observations of the suspect's actions at the scene — the brief investigative detention and pat-down of the suspect's outer clothing was reasonable in this case. See, e.g., *United States v. Rookard*, 2007 WL 2176895 (W.D. N.Y. 2007) (where police in high crime area, late at night, were confronted by individual who made strange and furtive movement, officer's fear for his safety was "reasonably prudent," which justified his taking reasonable steps to protect himself and others). Carter does not contest the subsequent series of events that led to the discovery of additional weapons and drugs in his Jeep ultimately resulting in his arrest.

The case of *State v. Dukes*, 279 Ga. App. 247 (630 SE2d 847) (2006), is not on point. Following *Florida v. J. L.* and other cases, it holds that an anonymous tip alone is insufficient to justify a second-tier detention. But like *Florida v. J. L.*, it is distinguishable because the defendant did not make any threatening movements that might have justified a second-tier detention.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED AUGUST 21, 2007 —
RECONSIDERATION DENIED SEPTEMBER 19, 2007 —

*Gregory K. Schwarz*, for appellant.

*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Assistant District Attorney*, for appellee.

