A08A2127. LEWIS v. THE STATE.
(669 SE2d 558)

BLACKBURN, Presiding Judge.

Following a stipulated bench trial, Horatio Lewis appeals his
conviction of possession of cocaine with intent to distribute,[1] con-
tending that the trial court erred by denying his motion to suppress
evidence found in his vehicle during an inventory search after his
arrest. Because the arrest arose from a valid *Terry* stop based on
reasonable articulable suspicion under the totality of the circum-
stances, and because the officer was then authorized to perform an
inventory search prior to impounding Lewis's vehicle, we affirm.

> When an appellate court reviews a trial court's order
> concerning a motion to suppress evidence, the appellate
> court should be guided by three principles with regard to
> the interpretation of the trial court's judgment of the facts.
> First, when a motion to suppress is heard by the trial judge,
> that judge sits as the trier of facts. The trial judge hears the
> evidence, and *his findings based upon conflicting evidence*
> *are analogous to the verdict of a jury and should not be*
> *disturbed by a reviewing court if there is any evidence to*
> *support it.* Second, the trial court's decision with regard to
> questions of fact and credibility . . . must be accepted unless
> clearly erroneous. Third, the reviewing court must construe
> the evidence most favorably to the upholding of the trial
> court's findings and judgment.

(Citations and punctuation omitted; emphasis omitted and sup-
plied.) *Tate v. State.*[2]

So construed, the evidence from the suppression hearing shows
that a patrol officer received a call from dispatch to go to a particular
intersection to look for an African-American male, who was appar-
ently selling drugs and was dressed in blue jeans, a gray hooded

---

[1] OCGA § 16-13-30 (b).
[2] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

sweatshirt, and white sneakers. Upon responding to the call, the officer saw Lewis, an African-American male, very near the specified intersection and wearing blue jeans, a gray hooded sweatshirt, and white sneakers. As the officer slowed his patrol car to a stop, Lewis noticed the officer approaching and began putting his hands down into the waistband of his pants. The officer exited his vehicle, unholstered his weapon, and told Lewis to stop what he was doing and to get on the ground. At that point, Lewis began walking toward a truck parked on the sidewalk near where Lewis was standing, and the officer again ordered him to stop. Lewis then broke into a run, fled behind some nearby houses, crossed through several back yards, and was ultimately tackled and arrested by the officer for obstruction.

The officer searched Lewis and found no contraband on Lewis but found keys to the truck where he first encountered Lewis. The officer searched the illegally parked truck prior to impounding it and discovered 87.4 grams of suspected crack cocaine, $1,565 in cash, and Lewis's identification. Lewis was charged with obstruction (which was nolle prossed) and trafficking in cocaine (which was reduced to possession with intent to distribute). Lewis moved to suppress the evidence found in his vehicle, which motion was denied after an evidentiary hearing. Following an unsuccessful motion to reconsider, Lewis agreed to a stipulated bench trial, in which he was found guilty of the possession charge, giving rise to this appeal.

1. Lewis contends that the officer's initial encounter amounted to an illegal arrest without probable cause. We disagree.

(a) *Whether the initial stop was a full-scale arrest.* "Georgia recognizes three tiers of police-citizen encounters: consensual encounters; brief investigatory stops that require reasonable suspicion; and arrests that require probable cause." *State v. Devine.*[3]

> [I]t is a mixed question of fact and law as to which type of encounter is occurring: The test for determining whether a person has been placed under custodial arrest is whether the individual was formally arrested or restrained to a degree associated with a formal arrest, not whether the police had probable cause to arrest. The test is whether a reasonable person in the suspect's position would have thought the detention would not be temporary. A trial court deciding whether to admit evidence must apply this objective test; it is the reasonable belief of an ordinary person under such circumstances, and not the subjective belief or intent of the

---

[3] *State v. Devine,* 276 Ga. App. 159, 160 (622 SE2d 854) (2005).

officer, that determines whether an arrest has been effected. . . . [T]o the extent that determination of the issue hinges on resolution of factual questions, we construe the evidence most favorably to uphold the trial court's findings and accept those findings unless they are clearly erroneous; but we independently apply the legal principles to those facts.

(Punctuation omitted.) *State v. Fisher*.[4] See *State v. Dixon*.[5]

Here, the officer, upon seeing Lewis notice him and reach into his waistband, unholstered his weapon and ordered Lewis to stop what he was doing and to get on the ground. Though the encounter was brief, the officer did not tell Lewis that he was under arrest, he did not order Lewis to put his hands behind his back, and he did not order Lewis into the back of his patrol car. The officer's order was given in the context of his investigation of a potentially-armed drug suspect and in light of Lewis's observed hand motions.

Based on this factual scenario, we cannot say that the trial court erred in concluding that the encounter was a second-tier investigatory detention rather than a full-scale arrest, as the forcible nature of the stop arose from the officer's primary concern at that point for his safety, and as the nature of the detention did not unambiguously convey a prolonged custodial arrest. A second-tier

investigatory stop is not automatically an arrest simply because an officer is armed[;] . . . it is often necessary for the police to approach a person with a drawn weapon in a suspiciously dangerous situation in order to protect the physical well-being of both police officers and the public.

(Citation and punctuation omitted.) *State v. Burks*.[6]

For example, this Court has held that officers were authorized to conduct a *Terry* stop by unholstering their service weapons, pointing them at a suspect, and handcuffing him, when the suspect met a description of an armed man and the suspect, after reaching into his vehicle, approached the officers and refused to show his hands despite commands from police. See *Carter v. State*.[7] See also *State v. Burks*, supra, 240 Ga. App. at 427 (1) (affirming finding of authorized second-tier encounter where officer drew weapon and ordered suspect to stop as suspect crawled through an opening in a private fence at 4:15 a.m.). To hold otherwise would require that an officer's

---

[4] *State v. Fisher*, 293 Ga. App. 228, 230 (666 SE2d 594) (2008).

[5] *State v. Dixon*, 267 Ga. App. 320, 321 (599 SE2d 284) (2004).

[6] *State v. Burks*, 240 Ga. App. 425, 426-427 (1) (523 SE2d 648) (1999).

[7] *Carter v. State*, 287 Ga. App. 597, 598-599 (651 SE2d 759) (2007).

precautionary, defensive tactics must be based on probable cause. That would unduly limit officers' ability to operate in the field, and we decline to do so here.

(b) *Whether the officer had authority to perform a second-tier detention.* As the encounter was a second-tier detention, we must determine whether the detention was

> justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The officer must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. While the officer's suspicion need not meet the standard of probable cause, it must be more than mere caprice or a hunch or an inclination.

(Citation and punctuation omitted.) *Reynolds v. State.*[8]

Here, the encounter began when the officer responded to a call from dispatch regarding an individual suspected of selling narcotics based on a call from an anonymous source. The responding officer spotted Lewis (who fully matched every element of the description given to him by dispatch) and slowed his cruiser to speak to Lewis. According to the officer's testimony at the suppression hearing, when the officer observed Lewis immediately putting his hands into his waistband, the officer suspected that Lewis could be reaching for a weapon, based on the officer's training and experience, which included performing more than 75 drug arrests. "Given the totality of the circumstances — the anonymous tip and the officer['])s personal observations of the suspect's actions at the scene — the brief investigative detention . . . was reasonable in this case," even at gunpoint. *Carter v. State*, supra, 287 Ga. App. at 599. See *Hinson v. State*[9] (forcible investigatory detention justified by circumstances). Therefore, the trial court did not err in finding that the initial stop was justified.[10]

2. Lewis also contends that the officer lacked authority to pursue

---

[8] *Reynolds v. State*, 280 Ga. App. 712, 714 (1) (634 SE2d 842) (2006).

[9] *Hinson v. State*, 229 Ga. App. 840, 842 (1) (c) (494 SE2d 693) (1997), rev'd on other grounds, *State v. Hinson*, 269 Ga. 862 (506 SE2d 870) (1998).

[10] In so holding, we note that the stop here was not based solely on the anonymous tip, so we find this case distinct from *Florida v. J. L.*, 529 U. S. 266 (120 SC 1375, 146 LE2d 254) (2000), and others, which hold that an anonymous tip alone is insufficient to justify a second-tier detention. See *Carter v. State*, supra, 287 Ga. App. at 599 ("[a]n anonymous tip may be paired with the surrounding circumstances when evaluating an officer's basis for a *Terry* stop"). Compare *Duke v. State*, 257 Ga. App. 609, 610 (571 SE2d 414) (2002) (reversing denial of motion to suppress because officer's *Terry* stop was based *solely* on radio relay of anonymous tip and the State provided no additional evidence of police's collective knowledge supporting reasonable suspicion).

him, arrest him, and search his vehicle. However, once the officer ordered Lewis to stop, based on his reasonable suspicion that Lewis had been selling drugs and was now reaching for a weapon or contraband, Lewis failed to heed the officer's order and broke into a run. This failure to obey the officer's lawful command gave rise to probable cause justifying the officer's subsequent arrest of Lewis for obstruction. See OCGA §§ 16-10-24 (b) (obstruction); 17-4-20 (a) ("[a]n arrest for a crime may be made by a law enforcement officer . . . without a warrant if the offense is committed in such officer's presence or within such officer's immediate knowledge"); *In the Interest of E. C.*[11] ("[f]light, or attempted flight, after a lawful command to halt constitutes obstruction of an officer within the meaning of OCGA § 16-10-24") (punctuation omitted).

Having lawfully arrested Lewis for obstruction, the officer was authorized to impound Lewis's vehicle which the officer stated was parked illegally on the sidewalk.

> While the police may not impound a car to search for contraband, they may impound a vehicle if they must take charge of it for some reason. The ultimate test for the validity of the police's conduct is whether, under the circumstances then confronting the police, their conduct was reasonable within the meaning of the Fourth Amendment.

(Citation and punctuation omitted.) *Johnson v. State.*[12] Here, the arresting officer testified that Lewis's vehicle was parked on the sidewalk, no one else was there to move it, and the officer "had no choice" but to move it. See OCGA § 40-6-203 (a) (1) (B) ("no person shall . . . park a vehicle . . . on a sidewalk . . ."). Under these circumstances, the evidence supported the trial court's conclusion that the officer's decision to impound the vehicle was reasonable.

As part of the impound process, the officer was authorized to perform an inventory search in connection with the impoundment, because "[t]he contents of an impounded vehicle are routinely [properly] inventoried to protect the property of the owner, protect the officers against claims for lost or stolen property, and protect the police from potential danger." (Punctuation omitted.) *Wright v. State.*[13] Accordingly, in light of the circumstances of this case, the trial court did not err in failing to exclude the evidence police discovered during the inventory search of Lewis's vehicle.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

---

[11] *In the Interest of E. C.*, 292 Ga. App. 798, 800 (665 SE2d 896) (2008).

[12] *Johnson v. State*, 263 Ga. App. 443, 445 (1) (587 SE2d 775) (2003).

[13] *Wright v. State*, 276 Ga. 454, 460 (5) (579 SE2d 214) (2003).

DECIDED NOVEMBER 17, 2008.

*J. Alfred Johnson*, for appellant.
*Patrick H. Head, District Attorney, Henry R. Thompson, John R. Edwards, Dana J. Norman, Assistant District Attorneys*, for appellee.