A11A2152. CHRISTY v. THE STATE.
(727 SE2d 269)

DILLARD, Judge.

Following a traffic stop that was based on his driving a vehicle with excessive window tinting, Curt Christy was charged, via accusation, with one count each of driving under the influence of alcohol to the extent it was less safe for him to do so (DUI less safe), driving under the influence of alcohol based on having a blood-alcohol content exceeding 0.08 grams per 100 milliliters (DUI per se), fleeing a police

---

officer, possession of an open alcoholic beverage container, excessive window tinting, and speeding. Thereafter, Christy filed a motion to suppress the evidence garnered as a result of the traffic stop and a motion to dismiss the accusation, arguing that the excessive-window-tinting statute was unconstitutional. The trial court agreed that the excessive-window-tinting statute was unconstitutional and dismissed that part of the accusation, but it nevertheless denied Christy's motion to suppress. Christy then stipulated to a bench trial and was convicted of DUI less safe, DUI per se, and speeding. On appeal, Christy contends that the trial court erred in denying his motion to suppress, arguing (1) that the court's finding that the excessive-window-tinting statute was unconstitutional should have compelled the grant of his motion to suppress and (2) that the traffic stop amounted to an arrest without probable cause. For the reasons set forth infra, we affirm.

Construing the evidence to uphold the trial court's findings and judgment,[1] the record shows that at approximately 7:30 p.m. on August 29, 2009, a Gwinnett County police officer was monitoring traffic from his marked patrol vehicle when he noticed Christy's gray Ford Mustang, with window tinting that appeared to be too dark, driving northbound. Determining that he needed to conduct a traffic stop to check the vehicle's window tinting, the officer pulled onto the road behind Christy and activated his patrol vehicle's blue lights. But instead of pulling over, Christy sped up and turned into a nearby subdivision. Maintaining his pursuit, the police officer activated his vehicle's sirens and radioed for backup. Several seconds later, Christy pulled into the driveway of a residence and stopped his vehicle just inside the carport. The officer parked behind Christy, and because the officer could not see into Christy's vehicle and believed that Christy had attempted to flee, he drew his weapon and ordered Christy to show his hands. Christy complied, at which point the officer ordered him to exit the vehicle and then handcuffed him.

Christy remained handcuffed for only a few minutes until the backup police officers arrived, and during that time, the officer told Christy that he was not under arrest but was being temporarily detained. However, while talking to Christy, the officer detected the odor of an alcoholic beverage and noticed that Christy's eyes were bloodshot and watery. Consequently, the officer had Christy perform several field sobriety tests, which indicated that Christy was impaired. In addition, the officer used a department-issued meter to test the tinting of Christy's vehicle's windows and determined that the tint

---

[1] *Hammont v. State*, 309 Ga. App. 395, 396 (710 SE2d 598) (2011).

exceeded the legal limits. The officer then arrested Christy for DUI and read him his *Miranda* rights as well as the implied-consent notice.[2] Christy submitted to a State-administered breath test, which ultimately indicated a blood-alcohol content of 0.192.

Christy was charged, via accusation, with one count each of DUI less safe,[3] DUI per se,[4] fleeing a police officer,[5] possession of an open alcoholic beverage container,[6] excessive window tinting,[7] and speeding.[8] Thereafter, he filed a motion to suppress the evidence garnered as a result of the officer's traffic stop and, later, filed a motion to dismiss the excessive tinting charge in the accusation, arguing that the statute violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution[9] by allowing an exemption for multipurpose passenger vehicles and vehicles that had the windows tinted before factory delivery[10] without any rational basis for doing so. The trial court held a hearing on both of Christy's motions, during which the arresting police officer, Christy's sister, and one of Christy's neighbors testified. Additionally, Christy argued that the excessive-window-tinting statute was unconstitutional, and thus, the police officer's traffic stop based on that statute was unlawful.

On February 2, 2011, the trial court issued an order ruling that the excessive-window-tinting statute was unconstitutional and dismissing that charge from the accusation. Nevertheless, the court found that it was not unreasonable for the arresting officer to have relied on the statute in determining whether to conduct a traffic stop of Christy's vehicle. The court further found that the traffic stop did not amount to an arrest without probable cause, and thus, it denied Christy's motion to suppress. Thereafter, Christy agreed to a stipulated bench trial, which concluded with the trial court finding him guilty on the DUI per se, DUI less safe, and the speeding charges but not guilty on the remaining charges.[11]

Subsequently, Christy filed notices of appeal to both the Court of Appeals of Georgia and to the Supreme Court of Georgia. Believing

---

[2] *See* OCGA § 40-5-67.1 (b) (2).
[3] *See* OCGA § 40-6-391 (a) (1).
[4] *See* OCGA § 40-6-391 (a) (5).
[5] *See* OCGA § 40-6-395 (a).
[6] *See* OCGA § 40-6-253 (b) (1) (B).
[7] *See* OCGA § 40-8-73.1 (b) (2).
[8] *See* OCGA § 40-6-180.
[9] *See* U. S. Const. amend. XIV sec. 1.
[10] *See* OCGA § 40-8-73.1 (c) (6) (A), (D).
[11] The two DUI charges were merged during sentencing.

651

that the Supreme Court had jurisdiction, we initially transferred the case to that court, but, in a September 12, 2011 order, the Supreme Court transferred the entire case back to the Court of Appeals. This appeal follows.

At the outset, we note that "[i]n reviewing a trial court's decision on a motion to suppress, we construe the evidence most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility of the witnesses are adopted unless they are clearly erroneous."[12] Additionally, because the trial court is the trier of fact, "its findings are analogous to a jury verdict and will not be disturbed if any evidence supports them."[13]

1. Christy contends that because the trial court ruled that OCGA § 40-8-73.1 (b) is unconstitutional, the court erred in nevertheless finding that the police officer's belief that Christy's vehicle violated the excessive-window-tinting statute justified the second-tier traffic stop. We disagree.

But first, because both Christy and the State devote a significant number of pages in their respective briefs arguing as to whether OCGA § 40-8-73.1 (b) is unconstitutional, we must remind the parties that the statute's constitutionality is not before us. Indeed, in its order transferring the case back to the Court of Appeals, our Supreme Court explicitly found that the constitutionality of OCGA § 40-8-73.1 (b) was not before it in light of the fact that "Christy has not asserted that the trial court erred in determining that the statute is unconstitutional, and the State cannot initiate review of that decision." Given that this determination is final and binding, we similarly cannot consider either Christy or the State's constitutionality arguments.[14]

We now turn to Christy's contention that the trial court erred in denying his motion to suppress after finding OCGA § 40-8-73.1 (b) unconstitutional. As previously noted, we disagree.

It is well settled law that "[b]efore stopping a car, an officer must have specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct."[15] But a traffic offense "provides the necessary facts for such reasonable suspicion" and "[w]hen an officer

---

[12] *Hammont*, 309 Ga. App. at 396 (punctuation omitted).

[13] *Id.* (punctuation omitted).

[14] *See Coker v. State*, 261 Ga. App. 646, 646-47 (1) (583 SE2d 498) (2003) (holding that Supreme Court's order transferring defendant's appeal to Court of Appeals because no constitutional questions were raised or ruled on in the trial court was final and binding, and thus, Court of Appeals could not consider defendant's constitutionality arguments).

[15] *State v. Simmons*, 283 Ga. App. 141, 143 (640 SE2d 709) (2006) (punctuation omitted).

witnesses a traffic offense, a resulting traffic stop does not violate the Fourth Amendment, regardless of the officer's motives for initiating the stop."[16]

In this matter, the officer stopped Christy's vehicle for the traffic offense of driving a vehicle with excessive window tinting. And the fact that this statute was later found to be unconstitutional does not render the stop invalid. Indeed, in *Ciak v. State*,[17] the case in which our Supreme Court struck down an earlier version of OCGA § 40-8-73.1 as unconstitutional,[18] the Court also held that "[t]he unconstitutionality of the statute does not, however, require the grant of the motion to suppress the evidence resulting from the traffic stop."[19] Citing the Supreme Court of the United States's opinion in *Michigan v. DeFillippo*,[20] our Supreme Court explained that

[p]olice are charged to enforce laws until and unless they are declared unconstitutional. The enactment of a law fore-closes speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws. Society would be ill-served if its police officers took it upon them-selves to determine which laws are and which laws are not constitutionally entitled to enforcement.[21]

And here, the officer observed that Christy's vehicle had darkly tinted windows and reasonably believed this to be in violation of OCGA § 40-8-73.1. Accordingly, he had a reasonable articulable suspicion to justify the traffic stop.[22]

2. Christy also contends that the trial court erred in denying his motion to suppress because the traffic stop amounted to an arrest without probable cause. Specifically, Christy argues that when the

---

[16] *Id.* (punctuation omitted).

[17] 278 Ga. 27 (597 SE2d 392) (2004).

[18] *Id.* at 28-29 (1) (holding that the former distinction drawn in OCGA § 40-8-73.1 between state residents and nonresidents was not justifiable as legislative attempt to address perceived problem of danger to police officers conducting vehicle stops, where no basis existed to distinguish between dangers posed by vehicles driven by residents and by nonresidents).

[19] *Id.* at 29 (2).

[20] 443 U. S. 31, 38 (III) (99 SC 2627, 61 LE2d 343) (1979).

[21] *Ciak*, 278 Ga. at 29 (2).

[22] *See id.* at 30 (2) (holding that unconstitutionality of excessive-window-tinting statute forming basis for traffic stop did not require suppression of evidence derived from stop); *see also Simmons*, 283 Ga.App. at 143 (holding that police officer's observation of darkly tinted windows on defendant's vehicle justified traffic stop).

officer drew his weapon, ordered him to show his hands outside the window of his vehicle, and handcuffed him, a full-blown arrest lacking probable cause occurred. Again, we disagree.

Georgia law "recognizes three tiers of police-citizen encounters: consensual encounters; brief investigatory stops that require reasonable suspicion; and arrests that require probable cause."[23] The determination as to which type of encounter is occurring is a mixed question of law and fact with the legal test being "whether the individual was formally arrested or restrained to a degree associated with a formal arrest, not whether the police had probable cause to arrest."[24] Specifically, "[t]he test is whether a reasonable person in the suspect's position would have thought the detention would not be temporary."[25]

As we held in Division 1, supra, the officer's belief that Christy's vehicle violated the excessive-window-tinting statute justified his initiating an investigatory traffic stop. But instead of stopping his vehicle when the officer activated his own vehicle's blue lights, Christy sped up and did not stop until he had pulled into the driveway of his residence. Faced with a suspect who appeared to be fleeing from him in a vehicle into which he could not see, the officer drew his weapon, ordered Christy to show his hands, and then briefly handcuffed him. In addition, the officer informed Christy at the time that he was detaining him until the officer could "figure out what [was] going on."

Given these circumstances, the initial encounter between the officer and Christy was a second-tier traffic stop "rather than a full-scale arrest, as the forcible nature of the stop arose from the officer's primary concern at that point for his safety, and as the nature of the detention did not unambiguously convey a prolonged custodial arrest."[26] Indeed, a second-tier investigatory stop is not automatically an arrest simply because an officer is armed; "it is often necessary for the police to approach a person with a drawn weapon in a suspiciously dangerous situation in order to protect the physical well-being of both police officers and the public."[27] Furthermore, an officer may even "handcuff a suspect during an investigatory stop when such action is either reasonable under the circumstances to protect [himself] or the public, or to maintain the status quo."[28]

---

[23] *Lewis v. State*, 294 Ga. App. 607, 608 (1) (a) (669 SE2d 558) (2008) (punctuation omitted).

[24] *Id.* (punctuation omitted).

[25] *Id.* (punctuation omitted).

[26] *Id.* at 609 (1) (a).

[27] *Id.* (punctuation omitted).

[28] *Stringer v. State*, 285 Ga. 842, 845 (2) (684 SE2d 590) (2009) (punctuation omitted).

Accordingly, the trial court did not err in concluding that this encounter was a proper second-tier stop and in denying Christy's motion to suppress on that basis.[29]

*Judgment affirmed. Ellington, C. J., and Phipps, P. J., concur.*

DECIDED APRIL 18, 2012.

*Wayne L. Burnaine*, for appellant.
*Rosanna M. Szabo, Solicitor-General*, for appellee.

---

[29] *See id.* (holding that officers may handcuff a suspect during an investigatory stop when such action is reasonable under the circumstances to protect themselves); *Lewis*, 294 Ga. App. at 609-10 (1) (a) (concluding that an investigatory stop is not automatically an arrest simply because a police officer is armed); *State v. Burks*, 240 Ga. App. 425, 426-27 (1) (523 SE2d 648) (1999) (same).