**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**August 16, 2013**

# In the Court of Appeals of Georgia

A13A1391. THAMMASACK v. THE STATE.

BARNES, Presiding Judge.

Following a stipulated bench trial, the trial court found Jimmy Thammasack guilty of possession of methamphetamine. On appeal, Thammasack contends that the trial court erred in denying his motion to suppress the methamphetamine found in his vehicle. For the reasons set forth below, we affirm.

In reviewing a trial court's decision on a motion to suppress, we construe the evidence most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility of the witnesses are adopted unless they are clearly erroneous. Further, because the trial court is the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if any evidence supports them. However, when evidence is uncontroverted and no question of witness credibility is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Citation and punctuation omitted.) *Campbell v. State*, 313 Ga. App. 436 (721 SE2d 649) (2011).

Viewed in the light most favorable to the trial court's ruling, the record shows that on the night of January 23, 2012, an officer with the Henry County Police Department was on patrol when he observed Thammasack driving a white Honda Civic in the opposite direction with red headlights engaged. Based on his training, the officer believed that headlights were legally required to emit a white-colored beam, and he considered a vehicle with red headlights to be a safety hazard because other drivers might be confused about the direction the vehicle was traveling. After making a U-turn in the road, the officer began to follow Thammasack's vehicle and ran a check on the license tag plate number. He learned from the license tag check that the plate number was registered to a black Honda Civic. According to the officer, he becomes concerned whenever a license tag check reveals a discrepancy in the color of the vehicle because "[p]eople will steal tags all the time off similar vehicles and place them on vehicles that are [a] similar make and model."

The officer activated his blue lights and initiated a traffic stop. Upon approaching the stopped vehicle, the officer explained to Thammasack the basis for the traffic stop, asked him to produce his driver's license, and inquired why the

2

vehicle had a different color than what was reflected in the license tag check. Thammasack produced a Florida driver's license and told the officer that he had painted the vehicle. The officer checked Thammasack's license and discovered that it had been suspended. He arrested Thammasack for driving with a suspended license, and during a subsequent inventory search of the vehicle, discovered half a gram of methamphetamine.

After he was indicted for possession of methamphetamine, Thammasack filed a motion to suppress in which his sole contention was that there was no reasonable basis for the officer to have initiated the traffic stop. He argued that OCGA § 40-8-34, the traffic code section governing the color of headlights,[1] was void for vagueness because it did not give motorists fair warning that headlights cannot be red. According to Thammasack, because OCGA § 40-8-34 was unconstitutionally vague, a traffic stop predicated on a perceived violation of that statute was likewise unconstitutional and required suppression of the evidence seized during the stop. Thammasack further argued that the discrepancy in the color of his vehicle discovered by the officer when he ran a check on the license tag plate number "was

---

[1] OCGA § 40-8-34 provides: "The color in all lighting equipment covered in this title shall be in accordance with Society of Automotive Engineers (SAE) Standard J578, April, 1965, as thereafter revised or amended."

3

not really grounds for the stop" in this case and thus could not provide an alternative basis for the stop of his vehicle.

The State conceded that OCGA § 40-8-34 was void for vagueness for purposes of Thammasack's motion to suppress but argued that the stop nevertheless was proper under the Fourth Amendment because the officer had an honest belief that a traffic violation had been committed in his presence. The State further argued that the discrepancy in the color of the vehicle discovered by the officer was sufficient by itself to justify the traffic stop.

After conducing an evidentiary hearing in which the officer and Thammasack testified, the trial court found that even if OCGA § 40-8-34 was void for vagueness, the officer had an honest belief that a traffic violation had been committed in his presence when he observed Thammasack driving a vehicle with red headlights. The trial court determined that, in light of the testimony at the hearing, the officer's stop of the vehicle had been reasonable and not arbitrary or harassing. Accordingly, the trial court denied Thammasack's motion to suppress.

The case proceeded to a bench trial on stipulated facts, and the trial court found Thammasack guilty of possession of methamphetamine. This appeal followed in

4

which Thammasack's sole enumeration of error is that the trial court improperly denied his motion to suppress.

We conclude that the trial court committed no error in denying Thammasack's motion to suppress the methamphetamine. "It is well settled law that before stopping a car, an officer must have specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct." (Punctuation and footnote omitted.) *Christy v. State*, 315 Ga. App. 647, 650 (1) (727 SE2d 269) (2012). "[T]he stop of a vehicle is authorized if an officer observes the commission of a traffic offense." *Taylor v. State*, 230 Ga. App. 749, 750 (1) (a) (498 SE2d 113) (1998). The State carries the burden of establishing the lawfulness of a traffic stop. *Morgan v. State*, 309 Ga. App. 740, 741 (710 SE2d 922) (2011).

The State can meet its burden of proving the lawfulness of the traffic stop even if the statute upon which the stop was based is later declared unconstitutional. As our Supreme Court has explained, the fact that the statute creating the traffic offense is subsequently declared unconstitutional "does not, of itself, require suppression of the evidence seized during the traffic stop." *Ciak v. State*, 278 Ga. 27, 30 (2) (597 SE2d 392) (2004). See *Christy*, 315 Ga. App. at 651 (1). This is because

5

[p]olice are charged to enforce laws until and unless they are declared unconstitutional. The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality – with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws. Society would be ill-served if its police officers took it upon themselves to determine which laws are and which laws are not constitutionally entitled to enforcement.

*Ciak*, 278 Ga. at 29 (2), quoting *Michigan v. DeFillippo*, 443 U.S. 31, 38 (99 SCt. 2627, 61 LEd2d 343) (1979).

Furthermore, we have repeatedly held that "[a]lthough an officer's honest belief that a traffic violation has actually been committed in his presence may ultimately prove to be incorrect, such a mistaken-but-honest belief may nevertheless demonstrate the existence of at least an articulable suspicion and reasonable grounds for the stop." (Citation and punctuation omitted.) *State v. Webb*, 193 Ga. App. 2, 4 (1) (386 SE2d 891) (1989). See *Stinson v. State*, 318 Ga. App. 351, 354 (1) (733 SE2d 390) (2012). In judging an officer's honest belief that a traffic violation occurred in his presence, courts must determine "whether the officer's motives and actions at the time and under all the circumstances, including the nature of the officer's mistake, if

any, were reasonable and not arbitrary or harassing." (Citation and punctuation omitted.) *Stinson*, 318 Ga. App. at 354 (1).

Applying these principles to the case-at-hand, we conclude that the trial court was authorized to find that the officer had reasonable articulable suspicion for stopping Thammasack's vehicle. Even if OCGA § 40-8-34 were deemed void for vagueness and thus unconstitutional,[2] the officer was confronted with red headlights that, based on his training and experience, he believed constituted a traffic violation and which he thought were confusing and dangerous to other drivers. Under these circumstances, there was evidence from which the trial court could find that the officer's stop was reasonable and not arbitrary and harassing. Accordingly, the trial court was entitled to uphold the traffic stop. Indeed, "[n]o purpose of deterrence would be served by suppressing the evidence found in this case, which was the product of a stop prompted by the officer's legitimate concern for public safety."

---

[2] The Supreme Court of Georgia has exclusive jurisdiction over "all cases in which the constitutionality of a law . . . has been drawn in question." Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (1). See *Lewis v. State*, 292 Ga. App. 257, 268 (3) (b), n. 11 (663 SE2d 721) (2008) (Court of Appeals lacks jurisdiction to address constitutional challenge to statute). However, the constitutional question of whether OCGA § 40-8-34 is void for vagueness need not be resolved in this case because, as we explain above, the traffic stop was valid irrespective of whether OCGA § 40-8-34 is declared unconstitutional.

7

(Citation and punctuation omitted.) *State v. Hammang*, 249 Ga. App. 811 (549 SE2d 440) (2001) (officer's honest but mistaken belief that defendant had violated traffic law by driving without headlights on through poorly lit intersection when it was "almost dark outside" provided reasonable articulable suspicion for traffic stop).

In any event, the record also reflects that, separate and apart from the issue of the red headlights, the officer stopped Thammasack's vehicle after discovering a discrepancy in the color of the vehicle when he ran a check on the license tag plate number. In *Andrews v. State*, 289 Ga. App. 679, 680-681 (658 SE2d 126) (2008), we held that an officer has reasonable articulable suspicion to stop a vehicle when a routine computer license tag check reveals that the vehicle is a different color than listed on the registration, because it would be reasonable for the officer to infer that the license plate may have been illegally switched from another vehicle. We further held that the fact that the officer ultimately learns through his investigation after pulling over the vehicle that the license plate had not been improperly switched "does not change the result." Id. at 681. Accordingly, in light of *Andrews*, we conclude that the officer was authorized to stop Thammasack's vehicle because of the color discrepancy revealed from running the license tag check, and we affirm the trial court's denial of the motion to suppress on that alternative ground as well. See

8

*Worsham v. State*, 251 Ga. App. 774, 775-776 (554 SE2d 805) (2001) (even if officer's mistaken belief that driver had violated motor vehicle registration law was unreasonable, officer nonetheless was authorized to conduct traffic stop after observing driver violate another traffic law by failing to maintain his lane).

*Judgment affirmed. Miller and Ray, JJ., concur.*