**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 12, 2020**

# In the Court of Appeals of Georgia

A19A1893. THE STATE v. WILLIAMS.

A19A1894. THE STATE v. JONES.

DOYLE, Presiding Judge.

Cedric Jones was charged with possession of methamphetamine with intent to distribute; possession of hydrocodone with intent to distribute; possession of marijuana with intent to distribute; possession of amphetamine; possession of alprazolam; possession of codeine; and possession of a firearm during the commission of a felony. Jeffrey Lamar Williams was charged with possession of methamphetamine with intent to distribute; possession of hydrocodone with intent to distribute; possession of marijuana with intent to distribute, possession of amphetamine; possession of alprazolam; two counts of possession of codeine; and possession of a firearm during the commission of a felony. The defendants moved to

suppress the evidence seized during a traffic stop, and the trial court granted the motion. The State appeals, and we reverse, for the reasons that follow in this consolidated appeal.

We review a ruling on a motion to suppress as follows:

First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. On numerous occasions the appellate courts of this [S]tate have invoked these three principles to affirm trial court rulings that upheld the validity of seizures. These same principles of law apply equally to trial court rulings that are in favor of the defendant. . . . [T]his standard of review requires us to focus on the findings of fact made by the trial court in its order and the evidence supporting those findings, rather than other evidence gleaned from the record, construing it in favor of upholding the trial court's order.[1]

---

[1] (Citation and punctuation omitted.) *State v. Rosenbaum*, 305 Ga. 442, 449 (2) (826 SE2d 18) (2019), quoting *Miller v. State*, 288 Ga. 286, 286-287 (1), 290 (2) (702 SE2d 888) (2010). See also *Williams v. State*, 301 Ga. 60, 61 (799 SE2d 779) (2017) (holding that "'an appellate court generally must limit its consideration of the disputed facts to those expressly found by the trial court. We must focus on the facts

So viewed, the record shows that at approximately 7:00 p.m. on September 24, 2017, a Brookhaven police officer noticed "a dark-colored Mercedes with mirror window tint" traveling in the right lane on Clairmont Road. According to the officer, he "noticed [his] reflection in the mirror — the windows of [his] patrol car," which told him "[t]hat the window tint was too dark." The officer slowed down and got behind the Mercedes, which immediately turned into a gated employee entrance to the Peachtree-DeKalb Airport, and then pulled back onto Clairmont, proceeding in the opposite direction from which it came. The officer continued to watch the Mercedes and noticed that the "brake lights kept coming on . . . , which made [him] think the [driver] was trying to find somewhere to turn around and come back in the same direction as the airport." The officer remained in place, and as he predicted, the Mercedes came back up Clairmont Road towards the airport, at which point the officer executed a traffic stop of the vehicle. According to the officer, approximately two-and-a-half minutes elapsed between the time he first noticed the window tint and when he executed the traffic stop.

---

found by the trial court *in its order*, as the trial court sits as the trier of fact.'") (emphasis in original).

3

The officer exited his patrol car, and as he approached the Mercedes, he noticed that he was unable to see through the back or rear passenger windows. The officer knocked on the window and instructed the driver — Sergio Giavanni Kitchens — to roll down all of the windows because the officer was unable to see any other occupants. While standing at the back window, the officer could smell "raw green marijuana coming from inside the car."[2] The officer asked Kitchens and the two other occupants of the vehicle for their identification; Kitchens produced his drivers license, and the front passenger — Williams — stated that he and the back seat passenger — Jones — had left their identification on an airplane.

The officer ran the tag on the vehicle, learned that it was registered to Williams, and called for backup. The officer told Kitchens that he smelled raw marijuana emanating from inside the car and asked if there was marijuana in the vehicle or on Kitchens's person. Kitchens responded that there was not and consented to a search of his person, which did not reveal contraband. A consensual search of Williams revealed approximately $3,000 in cash. When the officer asked him if he had any marijuana, Jones replied that "they just got done smoking marijuana earlier."

---

[2] The officer had extensive experience in narcotics interdiction and narcotics cases.

The officer's initial search of the car revealed marijuana residue on the floorboard on the driver's side, a half-full bottle of an alcoholic beverage behind the driver's seat, and a jar containing marijuana and two bottles of codeine syrup in the armrest compartment. The officer placed all three men under arrest and continued to search the car, finding two guns, multiple miscellaneous pills, a clear bag containing MDMA, and a larger stack of cash.[3]

Following their arrest, Williams and Jones ("the defendants")[4] moved to suppress the evidence found in the search of Williams's car. At the hearing, the officer testified that the sole reason he stopped the car was because he believed the window tint violated Georgia law, explaining that "[t]he legal limit is 32 but the law actually reads plus or minus [3]. And that was way below 32 percent." According to

---

[3] The officer placed all three men on the curb, at which time they were in custody. Before the suspects were advised of their rights pursuant to *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966), the officer directed questions to them regarding their ownership of the various items found in the Mercedes. The driver and Jones responded to some of the questions. The statements are not relevant to our review of the trial court's ruling on the motion to suppress, and the State advised during the hearing that it did not seek to introduce any of those statements in light of the officers' failure to *Mirandize* the suspects.

[4] Kitchens was indicted for a window tint violation and possession of less than an ounce of marijuana. He subsequently entered a non-negotiated guilty plea to the window tint violation, and the State entered a nolle prosequi to the marijuana charge. He is not a party to this appeal.

5

the officer, he did not initiate a traffic stop of the vehicle when it pulled into the employee entrance of the airport because there was not enough room for him to pull his patrol car off of the roadway. Instead, the officer elected to stop in the center turn lane of the road to watch the vehicle, and he decided to continue doing so after he observed their brake lights, which he interpreted as the driver looking for a place to turn around. The officer testified that he told one of the backup officers "about the suspicious maneuvers . . . with the turning the opposite direction and the brake lights[,] . . . that when [he] made contact with the car . . . [he] smelled raw green marijuana coming from inside the car."[5]

At the conclusion of the hearing, the trial court advised the State that "it's going to be close. Let me make sure everybody knows that." Thereafter, the court granted the defendants' motion to suppress. In the order, the court conceded that the officer "testified, unequivocally, that the sole reason for stopping this vehicle was based upon a supposed window tint violation as codified in OCGA § 40-8-73.21 (b)." The court went on to find that:

---

[5] At the hearing, the State played the video from two other officers' body cameras. On one video, the officer who stopped the vehicle can be heard stating that he was unable to see into the car because of the tint.

6

However, there was no credible evidence presented, whatsoever, how this vehicle's window tint violated OCGA § 40-8-73.1 (b). See OCGA § 40-8-73.1 (c) (6) (D) (there is no violation of OCGA § 40-8-73.1 (b) when the window tint was darkened before factory delivery or permitted by federal law or regulation). Thus, without credible evidence that the window tint was placed on this vehicle after being delivered by the manufacturer, the stop of . . . Williams's vehicle and the seizure of [the defendants] was illegal. . . ."

Further, there was absolutely no credible evidence presented as to why this vehicle's window tint violated OCGA § 40-8-73.1 (b), to wit: the light was reduced to less than . . . 32 . . . percent, plus or minus . . . 3 . . . percent, or increase light reflectance to more than . . . 20 . . . percent. Without this evidence, it is impossible for this [c]ourt to conclude that this seizure was not based on a hunch or inclination. Specifically, the only evidence presented was that Officer Fikes could see himself in the window's reflection. This evidence does not convince this [c]ourt that there were specific, articul[able] facts sufficient to give rise to a reasonable suspicion of a violation of OCGA § 40-8-73.1 (b). . . . This is not the type of "good faith" belief that a traffic violation is actually being committed[,] which would legally permit a stop of this vehicle as the credible evidence failed to articulate a factual basis for believing that this vehicle was in violation of OCGA § 40-8-73.1 (b).[6]

---

[6] The trial court cited *Terry v. State*, 283 Ga. App. 158, 160 (640 SE2d 724) (2007) (affirming the denial of a motion to suppress because, "regardless of whether [the defendant's] driving maneuvers were illegal," the police officer "was authorized to conclude that in turning off the roadway, engaging in a possibly illegal backing

The State appeals, arguing that the trial court erred by granting the defendants' motions to suppress. We agree.

To justify a traffic stop, an officer must have "an articulable suspicion of wrongdoing. An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity."[7] "[A] traffic offense provides the necessary facts for such reasonable suspicion[,] and when an officer witnesses a traffic offense, a resulting traffic stop does not violate the Fourth Amendment, regardless of the officer's motives for initiating the stop."[8] An

maneuver, and then driving away in the opposite direction, [the driver] was attempting to avoid the road check"); *State v. Keddington*, 264 Ga. App. 912, 913-914 (2) (592 SE2d 532) (2003). The court also found that a Gwinnett County State Court judge had found the current version of OCGA § 40-8-73.1 to be unconstitutional and that this Court "published" that ruling in *Christy v. State*, 315 Ga. App. 647 (727 SE2d 269) (2012). We note that in *Christy*, this Court specifically determined that we could not consider the constitutionality arguments, citing the order of the Supreme Court of Georgia transferring the case to this Court because the defendant did not challenge the trial court's ruling finding the statute unconstitutional. See id. at 649. To date, the current version of the statute remains good law. Furthermore, the fact that a statute is found to be unconstitutional after a traffic stop does not render the stop invalid. See id. at 651 (1).

[7] (Punctuation omitted.) *Ciak v. State*, 278 Ga. 27, 30 (3) (597 SE2d 392) (2004).

[8] (Punctuation omitted.) *Christy v. State*, 315 Ga. App. 647, 650-651 (1) (727 SE2d 269) (2012).

officer's belief that a suspect's window tint violates OCGA § 40-8-73.1 is sufficient to justify an investigatory stop, even if the officer later determines from a field test that the window tint did not in fact violate the statute.[9]

OCGA § 40-8-73.1 (b) provides:

Except as provided in this Code section, it shall be unlawful for any person to operate a motor vehicle in this state: (1) Which has material and glazing applied or affixed to the front windshield, which material and glazing when so applied or affixed reduce light transmission through the windshield; or (2) Which has material and glazing applied or affixed to the rear windshield or the side or door windows, which material and glazing when so applied or affixed reduce light transmission through the windshield or window to less than 32 percent, plus or minus 3 percent, or increase light reflectance to more than 20 percent.

Here, the trial court found that the officer testified that he stopped the vehicle "based on a supposed window tint violation as codified in OCGA § 40-8-73.1 (b)" and that the officer testified that he "could see himself in the window's reflection." These findings are sufficient to justify the traffic stop.[10]

---

[9] See *Ciak*, 278 Ga. at 30 (3). See also *Christy*, 315 Ga. App. at 651 (1); *State v.Simmons*, 283 Ga. App. 141, 143 (640 SE2d 709) (2006).

[10] See *Ciak*, 278 Ga. at 30 (3) (affirming the denial of a motion to suppress because "[t]he undisputed facts before the trial court were that the officer conducting

9

We further note that the trial court erred by suppressing the evidence based on its determination that "there was no credible evidence that the window tint was placed on this vehicle after being delivered by the manufacturer." OCGA § 40-8-73.1 (c) (6) (D) provides that

> [t]he provisions of subsection (b) of this Code section shall not apply to . . . [t]he rear windshield or the side or door windows, except those windows to the right and left of the driver of . . . [a]ny other vehicle, the windows or windshields of which have been tinted or darkened before factory delivery or permitted by federal law or regulation."

This exception, however, does not require that police determine whether the windows were darkened before factory delivery or as permitted by federal law *before* stopping a vehicle for a window tint violation, nor does it mean that an officer's failure to do so requires suppression of evidence found during a search subsequent to such a stop

---

the stop in this case observed [the defendant's] car, noted that the windows were tinted a dark purple, and believed the tinting appeared darker than that permitted by OCGA § 40-8-73.1"); *Christy*, 315 Ga. App. at 651 (1) ("[T]he officer observed that [the defendant's] vehicle had darkly tinted windows and reasonably believed this to be in violation of OCGA § 40-8-73.1. Accordingly, he had a reasonable articulable suspicion to justify the traffic stop."); *Simmons*, 283 Ga. App. at 143 (reversing the suppression of evidence found after a traffic stop because "[t]he officer observed a vehicle with dark tinted windows and believed them to be in violation of the statute. That was sufficient to justify the investigatory stop.").

10

based on a lack of probable cause. Indeed, the Supreme Court of Georgia has rejected a defendant's argument that

> a traffic stop based on OCGA § 40-8-73.1 could not be valid because the statute contains too many elements which cannot be ascertained by an officer merely observing a vehicle with tinted windows[, s]pecifically, . . . that an officer cannot determine before stopping the car whether . . . the tint was applied by the manufacturer or as an after-market modification. . . .[11]

Accordingly, the trial court erred by granting the defendants' motion to suppress.

*Judgment reversed. Coomer and Markle, JJ., concur.*

---

[11] *Ciak*, 278 Ga. at 30 (c).